# EDWARD O. SECCOMB AND OTHERS v. FRANK A. BOVEY.[1]

## January 19, 1917.

## Nos. 19,968—(119).

**Will — domicile of testator.**

1. *Held*, that the evidence was sufficient to justify the finding that testatrix had changed her domicile of origin and that her domicile was in the District of Columbia at the time she executed the will in question.

**Probate court —decree of foreign court not controlling.**

2. The judgment of the probate court in Massachusetts holding a will invalid because not executed in accordance with the laws of that state, *held* not to be binding upon the probate court of Minnesota, where the decree in Massachusetts was entered subsequent to the one in Minnesota.

From an order of the probate court for Hennepin county, Dahl, J., admitting to probate the last will and testament of Helen M. Griggs, deceased, and from an order appointing Frank A. Bovey executor of the will, Addie L. Seccomb, Grace Seccomb Wallace, Bertha Seccomb Hunt and Hilda Seccomb Fox appealed to the district court for that county. The appeals were heard by Hale, J., who made findings and affirmed the orders of the probate court. The motion of the executors of Addie L. Seccomb, deceased, and others was granted in part and denied in part. Their motion for a new trial was denied. From the judgment entered pursuant to the order for judgment, they appealed. Affirmed.

*Stiles W. Burr, Horace H. Glenn* and *John W. Saxe,* for appellants.
*Edwin S. Slater,* for respondent.

QUINN, J.

Helen M. Griggs died in the state of New York leaving what purported to be her last will and testament, and leaving also a considerable property in this state in the hands of Frank A. Bovey, who was named as executor of the will. The will was duly presented to the probate court of Hennepin

[1]Reported in 160 N. W. 1018.

county, wherein the property was located, and where Bovey resided, and in due course of procedure was admitted to probate on the twenty-seventh day of January, 1914. Appellants appeared before that court and set up in support of a contest of the validity of the will: (1) That testatrix, at the time the will was executed, had her domicile in the state of Massachusetts, and that the validity of the will must be tested by the laws of that state, alleging in that regard that the laws of that state require all wills to be attested by three witnesses, and since this will was attested by but two witnesses, it was invalid under the laws of the state of Massachusetts, and by reason thereof invalid in this state and elsewhere; and (2) that the will had been presented to the probate court in Massachusetts and was by the judgment of that court held invalid for the lack of the necessary attesting witnesses; that the judgment of that court is binding upon the courts of Minnesota. There was an appeal from the probate court to the district court of Hennepin county, where the issues thus presented were heard by the court without a jury, resulting in an affirmance of the judgment of the probate court. The trial court found as a fact that the domicile of testatrix—she had no fixed place of residence—at the time the will was executed, was in Washington, D. C., and not in the state of Massachusetts, as claimed by contestants. Only two attesting witnesses to a will are required by the laws of the District of Columbia, and the will, therefore, under that finding was valid, and also valid under the laws of the state of Minnesota. Judgment was so entered and contestants appealed.

The assignments of error present two principal questions, namely: (1) Whether the findings of the trial court are clearly against the evidence; and (2) whether the judgment of the Massachusetts court is binding upon the courts of this state.

At the time of the execution of the will, testatrix was over 80 years of age, yet there is no claim that she was mentally infirm, or that the will was procured from her by undue influence. She wrote the will herself, copying parts thereof from a preceding will, and therein she remembered by gifts a large number of near and distant relatives, including

contestants herein. It was in fact prepared in Boston, Massachusetts, and so recites the fact, and we have as the principal question, whether the trial court erred in refusing to find that state as her domicile. We come directly to the question.

Testatrix was born at Brookline, Massachusetts, on November 11, 1830, and there grew to womanhood; she never married, and died on November 6, 1913, at Dansville, in the state of New York. At the time of her death, and for many years prior thereto, she owned certain personal property in the custody and control of Frank A. Bovey, in Hennepin county, this state, of the value of about $27,000. She had no property in the state of Massachusetts, except a few articles of furniture, and no real estate there or elsewhere. She had some personal belongings in New Jersey, and a small amount of money in a bank in the state of New York. The property in Minnesota had been in the charge of Bovey for some years, and had been invested and reinvested by him for testatrix and as her representative. At the age of 33 or in 1863, testatrix left her home and took up the occupation of a nurse at Washington, D. C., where she remained for several years. Her father died at the old home in Massachusetts in 1870, and testatrix never thereafter returned to that state to reside. After the father's death, the mother went to live with a sister, and the homestead was sold and conveyed to third persons. Testatrix stored some of her household effects in the attic, but in later years they were removed therefrom and stored elsewhere. She was described in the deed conveying the homestead as Helen M. Griggs, of Brookline, Massachusetts, but she did not then in fact reside there or in any other place in Massachusetts. In fact after the death of her father and the consequent breaking up of the family home, she became a person without a home, a wanderer, a traveler in Europe and this country, with no fixed place of residence or abode. She was in comfortable circumstances, and took her enjoyment in life in the recreation of travel and visiting with friends and relatives in different parts of the country. Some of her most intimate and lifelong friends testify that they never knew of her having a home in Massachusetts after the death of her father; that she spent most of her time abroad traveling; that she came back to this country from time to time and would go directly to Washington; that after her father's death she always called Washington her home; that upon one occasion she

wrote that when people asked her where she lived she told them Washington. She wrote at another time that she was coming to Washington where she could be in easy reach of her mother. One witness testified that she first saw Miss Griggs in Washington in February, 1868; that she had been living there for about three years; that she came there in 1865 and did some very beautiful duty in the hospitals; that witness again saw her in Washington in 1913, after her last return from abroad; that she then was ill in a hospital; that she then told witness that she had intended to remain indefinitely, but had suddenly changed her mind and was going to the sanatorium in New York, but was coming back. Also that on her last return from abroad she landed in Boston in the late summer or early fall of 1912 and intended to go directly to Washington, but her physician advised her to stop off at Atlantic City; that she then went out to the Outlook at Arlington Heights for a short time, then returned to Boston and visited friends for a few weeks, and while there called upon her cousins at Brookline and in early December again went to Atlantic City in accordance with the advice of her physician, and there remained until spring, when she returned to Washington, remaining just across the line in Maryland until July, when she went to the sanatorium in New York where she died. When abroad she did not remain in any one place for any considerable length of time, but traveled from place to place, and at one time went around the globe. On her last trip abroad she remained some 10 or 12 years.

While it is true that great weight should be given to the recital in a deed or will as to the residence of the person executing such instrument, yet it is also true that such a recital is, by the great weight of authority, not regarded as conclusive on the question of domicile.

With respect to the evidence necessary to establish the intention to change the domicile, no positive rule can be adopted, but the intention may be gathered both from acts and declarations. Acts are generally regarded as more important than declarations, and written declarations are usually more reliable than oral ones. Dupuy v. Wurtz, 53 N. Y. 562.

We are of the opinion that the question of domicile of the testatrix at the time of the execution of the will under the evidence was one of fact

for the trial court to determine, and that the findings of the trial court upon that question are not so manifestly against the weight of evidence as to require a new trial.

As to whether the judgment of the probate court in Massachusetts is binding upon the probate court in Minnesota, it appears: That the decree of the Massachusetts court was entered of record on the eleventh day of November, 1914, disallowing and refusing to admit the instrument to probate as the last will and testament of the deceased, upon the sole ground that the same was not properly executed. It does not appear that the question of domicile was considered or determined by that court, nor does it appear that the probate court under the laws of that state had any power to admit to probate a will executed in Massachusetts not according to the laws of that state, though it may have been according to the law of the domicile of testatrix.

The decree of the probate court in Minnesota admitting the will to probate was entered of record on the twenty-seventh day of January, 1914. The decree in the Massachusetts court is not *res adjudicata*.

Order affirmed.