## DULUTH-SUPERIOR DREDGING COMPANY v. COMMISSIONER OF TAXATION.[1]

May 5, 1944.

No. 33,743.

[1]Reported in 14 N. W. (2d) 439.

*Holmes, Mayall, Reavill & Neimeyer,* for relator.

*J. A. A. Burnquist,* Attorney General, and *P. F. Sherman,* Assistant Attorney General, for respondent.

YOUNGDAHL, JUSTICE.

*Certiorari* upon the relation of Duluth-Superior Dredging Company to review a decision of the board of tax appeals affirming an order of the commissioner of taxation assessing against relator a deficiency in income tax of $832.21, plus interest thereon, for the year 1939.

A stipulation by the parties embodies the following pertinent facts: Relator, a Minnesota corporation engaged in the business of dredging, received during the calendar year 1939 income properly assignable to Minnesota of $28,981.22. In the same year it received under a dredging contract performed wholly within the state of Pennsylvania the sum of $257,322.67, for which it expended directly for work, labor, and materials in the performance thereof a total sum of $193,977.81. It also received $1,102.22 for gas tax refunds and sales of scrap. During the taxable year it expended the further sum of $68,821.42, which constituted deductions not connected with or allocable against the production or receipt of gross income assignable to the state of Minnesota, nor connected with or allocable against the production or receipt of gross income assignable to other states and not entering into the computation of any net income assignable to the state of Minnesota under § 25 of the Minnesota income tax act (L. 1933, c. 405) and which in consequence is to be allowed as deductions from Minnesota income in the proportion which relator's gross income from sources within the state bears to its gross income from all sources, as provided in § 24(b) of said act.

In attempting to arrive at the proper percentage of these expenditures which may be thus deducted, the parties are in agree-

ment that the gross income from sources within the state is $28,981.22, but they disagree as to what constitutes gross income from all sources. Relator contends that the sum of $257,322.67 received for the performance of the dredging contract in Pennsylvania does not constitute gross income within the meaning of the act until the direct expenses of $193,977.81 incurred in the execution of the contract have been deducted. It claims that these expenditures were an investment of capital assets and as such properly deductible in determining gross income. Such a deduction would reduce the amount of gross income received from all sources to $93,428.30, thereby resulting in a deduction of 31.02 percent of such expenses in the computation to determine the taxable net income in Minnesota. The commissioner of taxation takes the position that gross income from all sources contemplates the total sum of $258,424.89, receipts under the Pennsylvania contract and gas tax refunds and sales of scrap, plus the agreed Minnesota gross income of $28,981.22, resulting in a total gross income of $287,406.11 with a resulting allocation of 10.8 percent of the expenses.

The sole issue before the board of tax appeals and before this court for review is the meaning of the term "gross income" as used in § 24(b) of the Minnesota income tax act, and whether it contemplates the inclusion or exclusion of those direct expenditures entailed in the performance of the Pennsylvania contract.

■ Our review of a decision of the board of tax appeals is limited by the provisions of Minn. St. 1941, § 271.10 (Mason St. 1940 Supp. § 2362-19). Similar limitations are imposed upon the circuit court of appeals when reviewing decisions of the United States board of tax appeals (now the Tax Court) which restrict the scope of review to a reversal or modification only if the decision is not in accordance with law. 26 USCA, Int. Rev. Code, § 1141(c)(1). Whether there is merit in relator's contentions or whether the issue might have been decided in its favor are questions not before us. We are concerned with the sole proposition of whether there is any legal basis under the statute for the board's decision. Village of Aurora v. Commr. of Taxation, 217 Minn. 64, 14 N. W. (2d) 292;

Dobson v. Commr. of Int. Rev. 320 U. S. 489, 64 S. Ct. 239, 88 L. ed. —. In Equitable L. Assur. Society v. Commr. of Int. Rev. 321 U. S. 560, 563, 64 S. Ct. 722, 724, 88 L. ed. —, the United States Supreme Court, in its most recent expression on the finality of an administrative determination on reviewing a decision of the Tax Court, said: "We may modify or reverse the decision of the Tax Court only if it is 'not in accordance with law.'" In the Village of Aurora case, *supra,* we cited with approval this expression of the court in the Dobson case, *supra* (320 U. S. 501, 64 S. Ct. 246, 88 L. ed. —) :

"* * * However, all that we have said of the finality of administrative determination in other fields is applicable to determinations of the Tax Court. Its decision, of course, must have 'warrant in the record' and a reasonable basis in the law. But 'the judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.'"

Limiting the scope of our review in the manner prescribed, we proceed to determine whether the board's decision as to what constitutes gross income within the meaning of the Minnesota income tax act has reasonable basis in the law.

■ The Minnesota income tax law was enacted in 1933 and the provisions thereof, insofar as are here pertinent, have remained substantially the same. There is no dispute that, since the dredging contract was performed in Pennsylvania and wholly without the state of Minnesota, the revenue received thereunder is by § 23 of the act assignable to the state of Pennsylvania. The *pro tanto* allocation of relator's expenses of $68,821.42 (mainly salaries and general expense) is provided for by § 24(b) of the act as follows:

"That proportion of such deductions, so far as not connected with and allocable against the production or receipt of such gross income assignable to this state and so far as not connected with and allocable against the production or receipt of gross income assignable to other states * * * shall be allowed which the taxpayer's gross income from sources within this state * * * bears to his gross income from all sources * * *."

The necessity for such a provision arises by reason of the fact that in business operations within and without the state expenses are incurred which are not directly connected with either business but which are incurred nevertheless in producing the total income. An illustration of this would be the salaries of officers whose time is devoted to managing the entire business, both within and without the state. Similarly, other expenses would fall in the same classification. Such deductions are required to be apportioned because they are a charge against the entire income and not merely that portion assignable to this state. See article by Professor Henry Rottschaefer, 18 Minn. L. Rev. 93, 156.

Relator contends that "It is only 'income' or 'gain' which is authorized to be taxed by the 16th Amendment, or which is taxed by the Minnesota law. In either case, whether taxes are based on 'gross income' or 'net income,' it is still only 'income' or *gain* (not gross receipts) which are referred to." Relator then reaches the conclusion that "gross income" means "gross gain," and to arrive at the so-called "gross gain" in the instant case the cost of performing the dredging contract must be deducted. It cites authority to the effect that "gross income" is not synonymous with "gross receipts" and that the term "income" means "gain" derived from capital, from labor, or both combined. The term "gross income" does not convey the same definite and inflexible significance under all circumstances. In the evolution of the income tax law it has come to have varied meanings. It is a term the construction and interpretation of which depend upon the context and subject matter under consideration. It has been defined to mean "gross receipts." Miles v. Dept. of Treasury, 209 Ind. 172,199 N. E. 372, 101 A. L. R. 1359; Columbia Ry. G. & E. Co. v. Jones, 119 S. C. 480, 112 S. E. 267; German Alliance Ins. Co. v. Van Cleave, 191 Ill. 410, 61 N. E. 94; Davis v. United States (2 Cir.) 87 F. (2d) 323; Storen v. Jasper County F. B. Co-op. Assn. 103 Ind. App. 77, 2 N. E. (2d) 432. Other courts have held that it is not synonymous in meaning with "gross receipts." Southern Pacific Co. v. Lowe, 247 U. S. 330, 38 S. Ct. 540, 62 L. ed. 1142, and cases therein cited. Text writers have dis-

tinguished the term from "gross receipts." 1 Mertens, Law of Federal Income Taxation, § 5.10. Frequently, accountants have developed or followed bookkeeping systems which lend themselves to a particular business and have labeled mathematical results as "gross receipts," "gross earnings," or "gross income," depending upon the nature of the taxpayer's business. The term "gross income" may not mean the same thing to the courts as it does to the businessman or accountant. Stratton's Independence, Ltd. v. Howbert, 231 U. S. 399, 34 S. Ct. 136, 58 L. ed. 285; Helvering v. Edison Bros. Stores, Inc. (8 Cir.) 133 F. (2d) 575. Similarly, any attempt to circumscribe the meaning of the term "income" by definition has been unsuccessful. The word is a generic term, broad and comprehensive, and its specific meaning must be determined from its use in the statute rather than by categorical definition. In 1 Mertens, Law of Federal Income Taxation, §§ 5.02 and 5.03, the difficulties surrounding such an attempt at definition are ably discussed. Well reasoned is this excerpt therefrom (§ 5.03):

"It seems apparent that 'constitutionally taxable income' is not a term that can be successfully defined so as to be binding for all time. The law of income taxation, like constitutional law in general, is dynamic, not static. It is constantly developing, constantly changing, to meet the changes in our economic and political life. * * *

"The difficulties surrounding an attempt to formulate any binding definitions in the legal field are particularly weighty in the field of income taxation."

In the instant case we are concerned with what the legislature intended should be included within the term "gross income," and we must look to the act and consider the term in the light of its context and subject matter. Section 11 of the act provides that the term shall include, among other things, "every kind of compensation for labor or personal services of every kind from any private or public employment, office, position or services, whatsoever; * * * income derived from the transaction of any trade or business; and income derived from any source whatever." "Net income" is de-

fined by § 10 as "the gross income as defined in Sections 11 and 12, less the deductions allowed by Section 13." The deductions to be made from gross income referred to in § 13 of the act include the following: "(a) Ordinary and necessary expenses paid or incurred in conducting the activity or in carrying on the trade or business from which the gross income is derived, * * *." If, as relator contends, "gross income" as used in the act means "gross gain" after expenses are deducted, then § 13 of the act becomes meaningless. By § 24(b), the legislature has provided the method of apportionment of expenses on a gross income basis in a ratio which the taxpayer's gross income from sources within the state bears to his gross income from all sources. It seems reasonable to believe that the legislature intended to include all revenue received from the dredging contract in determining how much of the general expense and officers' time and effort was devoted to the Pennsylvania contract in proportion to the Minnesota business. The logical basis or starting point for such a computation is the total gross revenue of the contract, including the expenses of its performance. If relator's theory were adopted and a situation would arise wherein the direct cost of performance, such as expenditures for work, labor, and material, was unusually high, so as to leave nothing after their deduction, all the salaries and general expense would then be allocated to Minnesota income, despite the fact that a substantial part of the officers' time was devoted to the Pennsylvania contract. We do not believe that such was the intention of the legislature. The officers' efforts and the expenses connected therewith generally increase in proportion to the increase in gross intake. The test in determining the amount of effort and time put forth by officers and employes is not whether there was a profit in the contract but the gross activity thereof.

In view of the conflicting definitions of the term "gross income" and the ambiguous use of the expression "gross earnings or receipts" in § 25(a)(2) of the act, it may be conceded that the legislative intent might have been couched in more explicit language so as to dispel any doubt as to its meaning. Nevertheless, when the

income tax law is considered in its entirety and the term "gross income" is specifically considered in connection with the allocability provision in the act, we reach the conclusion that the legislature had in mind a gross and all-inclusive figure which represented total revenue, whatever it might be properly called, from which would be deducted certain expenses of business in order to arrive at the "gain" or "profit" which is the taxable net income contemplated by the tax law. For interpretation of a similar provision in the federal income tax law (47 Stat. 169, c. 209, Rev. Act 1932, § 119[a, b], 26 USCA, Int. Rev. Acts, pp. 526, 527), see Third Scottish Am. Trust Co. Ltd. v. United States (Ct. Cl.) 37 F. Supp. 279.

■ Relator insists that the money spent for labor, materials, and supplies was not an ordinary and necessary business expenditure and that the provisions of § 13 of the act do not apply; that it represents untaxable capital investment and should be deducted from the total revenue received from the dredging contract in order to arrive at relator's gross income. Relator devotes considerable space in its brief in contending that a return of capital is not income. With the latter contention there is no disagreement. It is well settled that a return of capital is not income (either gross or net). 1 Mertens, Law of Federal Income Taxation, § 5.10; Southern Pacific Co. v. Lowe, 247 U. S. 330, 38 S. Ct. 540, 62 L. ed. 1142; Doyle v. Mitchell Bros. Co. 247 U. S. 179, 38 S. Ct. 467, 62 L. ed. 1054; Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. ed. 521, 9 A. L. R. 1570. Relator relies upon these cases in support of its contention that the expenses of the dredging contract are a return of capital and should be first deducted before arriving at the gross income. These cases are clearly distinguishable because they did not involve expenditures similar to those in the instant case. They went no further than to hold that the revenue there received constituted a return of capital and therefore was not part of the gross income. Magill, Taxable Income, p. 305. It is still another thing, however, to assert that expenditures for work, labor, and materials are a capital investment. Illustrations of what the fed-

eral courts have held to constitute a return of capital as distinguished from ordinary business expenses are the following: Cripple Creek Coal Co. v. Commr. of Int. Rev. (7 Cir.) 63 F. (2d) 829; Parkersburg, I. & S. Co. v. Burnet (4 Cir.) 48 F. (2d) 163; Meredith Pub. Co. v. Commr. of Int. Rev. (8 Cir.) 64 F. (2d) 890 (*certiorari* denied, 290 U. S. 646, 54 S. Ct. 64, 78 L. ed. 560); Pioneer P. & S. Co. v. Commr. of Int. Rev. (6 Cir.) 55 F. (2d) 861; George H. Bowman Co. v. Commr. of Int. Rev. 59 App. D. C. 13, 32 F. (2d) 404. On the other hand, the Supreme Court of the United States has held that ordinary business expenses cannot be construed as an investment of capital assets. Burnet v. Sanford & Brooks Co. 282 U. S. 359, 51 S. Ct. 150, 75 L. ed. 383. Relator attempts to distinguish this case, since the controlling issue there was whether income received at a later period, which represented reimbursement for losses sustained and reported in earlier years, was taxable income. While it is true the issue in the Burnet case was not the same as here, nevertheless the court could not have reached the conclusion it did without holding that the direct costs of the dredging contract were not capital investment. In determining what items should be included in the gross income later received, it was necessary to determine whether the expenditures made were of capital or in the usual course of business. The court there said (282 U. S. 363, 51 S. Ct. 151, 75 L. ed. 386):

"'* * * * the expenditures were made in defraying the expenses incurred in the prosecution of the work under the contract, for the purpose of earning profits. They were not capital investments, the cost of which, if converted, must first be restored from the proceeds before there is a capital gain taxable as income.'"

In determining whether expenditures fall within the classification of capital investment or necessary business expenses, the federal courts have applied the language of § 215 (b) of the Revenue Act of 1918 (40 Stat. 1069, c. 18), which provides that if such expenditure was made "to increase the value of any property or estate" it should be considered a capital expenditure, otherwise not. Marsh Fork Coal Co. v. Lucas (4 Cir.) 42 F. (2d) 83; Enterprise Coal Co.

v. Phillips (D. C.) 12 F. Supp. 49; Peerless Stages v. Commr. of Int. Rev. (9 Cir.) 125 F. (2d) 869. Invested capital imports laying out of money or money's worth in acquiring something of permanent use in business. Houston Natural Gas Corp. v. Commr. of Int. Rev. (4 Cir.) 90 F. (2d) 814; Pioneer P. & S. Co. v. Commr. of Int. Rev. (6 Cir.) 55 F. (2d) 861.

Considering the nature of relator's expenditures and the purpose for which they were made, there is ample justification for the conclusion of the board of tax appeals that they were ordinary and necessary business expenses and not capital investment.

We find that there is reasonable basis in the law for the board's interpretation of the provisions of the act under consideration, and its decision should be affirmed.

Affirmed.

