## ALLEN T. MILLER v. COMMISSIONER OF TAXATION.[1]

July 16, 1953.

Nos. 35,848, 35,849.

*J. A. A. Burnquist,* Attorney General, and *Joseph J. Bright* and *Joseph S. Abdnor,* Assistant Attorneys General, for relator.

*Oppenheimer, Hodgson, Brown, Baer & Wolff* and *John G. Robertson,* for respondent.

---

[1]Reported in 59 N. W. (2d) 925.

LORING, CHIEF JUSTICE.

Certiorari upon the relation of the state of Minnesota to review a decision of the board of tax appeals.

The commissioner of taxation for the state of Minnesota, in two separate orders, ordered additional income tax against the estate of Addison Miller in the sum of approximately $46,000 for two periods in 1942 and 1944. Respondent here, executor of the estate, appealed from both orders to the board of tax appeals. The two cases were consolidated for purposes of hearing by the tax board. The sole issue presented to the board was whether the domicile of Addison Miller was in Florida or Minnesota during the periods involved. The board, in a unanimous decision, reversed the commissioner in both cases, holding that Miller was domiciled in Florida during the periods involved. The commissioner secured two writs of certiorari from this court to review the matter.

Addison Miller, a bachelor, died in September 1944 in the city of St. Paul at the age of 59. It apparently is not disputed that prior to 1938 he was domiciled in Minnesota. In 1938, Miller purchased and remodeled a home in Florida. There was evidence that he expressed an intent to live permanently in Florida. There also was evidence that he established certain business, social, political, and religious associations in Florida and severed similar relations in Minnesota. However, he did retain certain business interests in Minnesota.

The findings of the tax board are comprehensive, including over 58 pages of the record. There is also a memorandum of 24 pages which discloses a thorough understanding of the questions presented for decision. Six assignments of error are listed in relator's brief. One assignment attempts to challenge 35 of the findings as not supported by the evidence. The parties are agreed that the sole issue presented on this appeal is the domicile of Addison Miller during the periods involved.

■ "Domicile" means bodily presence in a place coupled with an intent to make such place one's home. State ex rel. Board of Christian Service v. School Board, 206 Minn. 63, 287 N. W. 625; In re

Application of Quale for Old Age Assistance, 213 Minn. 421, 7 N. W. (2d) 153; In re Adoption of Pratt, 219 Minn. 414, 18 N. W. (2d) 147.

■ As has been emphasized in several decisions, the function of this court in reviewing a decision of the board of tax appeals involving questions of fact is to determine whether there is sufficient evidence to support the decision. Duluth-Superior Dredging Co. v. Commr. of Taxation, 217 Minn. 346, 14 N. W. (2d) 439; Village of Aurora v. Commr. of Taxation, 217 Minn. 64, 14 N. W. (2d) 292; Cargill, Inc. v. Spaeth, 215 Minn. 540, 10 N. W. (2d) 728; see, M. S. A. 271.10. See, also, State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. (2d) 544; In re Estate of Calich, 214 Minn. 292, 8 N. W. (2d) 337.

■ There can be no dispute that under the facts presented the "bodily presence" element of "domicile" is adequately established. See, 17 Am. Jur., Domicil, § 20; 28 C. J. S., Domicile, § 10b; 1 Beale, Conflict of Laws, § 13.3.

■ The real question presented by this appeal is whether there is sufficient evidence in the record to support the board's finding that Addison Miller intended to make Florida his home.[2] As we view the record his intent is a question of fact definitely in dispute in the present controversy. See, Nelson v. Sandkamp, 227 Minn. 177, 34 N. W. (2d) 640, 5 A. L. R. (2d) 1186; Seccomb v. Bovey, 135 Minn. 353, 160 N. W. 1018. There was evidence presented that Miller made definite statements that it was his intention to make Florida his permanent residence and home. He purchased a home in that state. The fact that certain religious, business, social, and government associations and affiliations were made by Miller in Florida and severed in Minnesota is consistent with an intent to make Florida his permanent home. The fact that Miller retained certain business connections in Minnesota may be considered in determining the sincerity of his announced intent, but these cir-

[2]It is to be pointed out that if the necessary intention to change one's domicile is, in fact, present, the motive or purpose in making the change is unimportant. Restatement, Conflict of Laws, § 22; 28 C. J. S., Domicile, § 11c; 17 Am. Jur., Domicil, § 26; 1 Beale, Conflict of Laws, § 22.1.

cumstances do not conclusively establish that he never changed his domicile from Minnesota to Florida. The same is true as to Miller's presence in Minnesota during part of the period involved. There was evidence introduced to explain such presence on the basis of pending litigation, limited business requirements, and his interests in the war production program. By no means could we say that such activities and presence sustained his domicile in Minnesota as a matter of law. The fact that Miller never actually disposed of his former residence in St. Paul but, in fact, actually resided there while in Minnesota, is of similar consequence. It is to be emphasized that it is the intention to abandon the former dwelling place as a *home* that is the important criterion. 1 Beale, Conflict of Laws, § 18.2.

The record sustains the findings and conclusions of the board that Addison Miller effectively changed his domicile from Minnesota to Florida.

Affirmed.