EDWARD G. BREMER AND ANOTHER v. COMMISSIONER OF TAXATION.[1]

March 2, 1956.

No. 36,639.

---

[1]Reported in 75 N. W. (2d) 470.

*Miles Lord,* Attorney General, and *Arthur C. Roemer,* Special
Assistant Attorney General, for relator.
*Briggs, Gilbert, Morton, Kyle & Macartney,* for respondents.

MATSON, JUSTICE.

Certiorari to review a decision of the Board of Tax Appeals adverse
to the relator, the commissioner of taxation.

We are concerned with the question of whether, under M. S. A.
290.10 (9), a taxpayer may take a deduction on his state income tax
return for payments of additional Federal income taxes levied and
paid on income for prior years, which income would likewise be
subject to a levy of additional state income taxes but for the sole
and only reason that such taxes for the years involved are barred by
the state statute of limitations.

During 1943, 1944, and 1945, and ever since, the taxpayer, Edward G.
Bremer, has been an annuity beneficiary of a trust created by the last
will of Adolf Bremer. The will, which created several trusts, pro-
vides that the trust income of each trust shall first be applied in
payment to the beneficiary of his designated annuity and, secondly,
that any income in excess thereof shall also be distributed to the

448

beneficiary. Acting in good faith upon the advice of counsel that the trust could properly pay the income tax on the trust income paid to a beneficiary, each of the trusts paid such Federal and state income taxes and thereafter paid the net income to the beneficiary as if it were a payment of a trust indebtedness to him. Accordingly, the trust, for the benefit of the taxpayer herein, paid such income taxes on the income reported in its returns for 1943 and 1944 and, in addition, for the express benefit of the taxpayer, paid the Federal and state income taxes on its returns for 1945 and all subsequent years to and including 1950.

Prior to the running of the Federal statute of limitations barring a levy of additional Federal taxes against the taxpayer for 1943, 1944, and 1945, but after the running of the state statute barring a levy of additional state taxes for said years, the United States Bureau of Internal Revenue and the state commissioner of taxation both questioned the obligation of the trustees to pay the Federal or state income taxes out of trust funds (as well as the right to distribute trust income as a payment of trust indebtedness to a beneficiary) and contended that all trust income distributable to a beneficiary was taxable to him individually whether or not such income had then been actually paid to such beneficiary. Present counsel for the beneficiaries and for the trustees advised their clients that this contention was correct. Accordingly, the commissioner and the Bureau of Internal Revenue each adjusted their respective state and Federal income taxes against the taxpayer by levying an additional assessment for each year not barred by their respective statutes of limitation. Under the longer Federal statute, the Internal Revenue Department was able to impose additional Federal income taxes for the years of 1943, 1944, and 1945, but for these years an imposition of additional state income taxes was barred by the shorter state statute of limitations.

Pursuant to the above adjustment, additional Federal income taxes of $38,130.39 were assessed against the taxpayer for these years. This additional amount consisted of three items which were paid or satisfied by the taxpayer in 1950 in the following manner:

First, the taxpayer paid by check $8,779.62 for interest and $14,522.23 for taxes. Secondly, the remaining $14,828.54 thereof, representing an erroneous overassessment of taxes to the trust, was by stipulation not refunded to the trust but was credited to the taxpayer.

After having in 1950 paid or satisfied the aforesaid items of additional Federal income taxes, for 1943, 1944, and 1945, the taxpayer claimed the same as a deduction upon his 1950 Minnesota income tax return. The commissioner disallowed the claimed deduction of all three items on the ground that the additional tax imposed and collected by the Federal government pertained to income *not included in the measure of the tax imposed by* § *290.10(9)*. The Board of Tax Appeals reversed the commissioner's order to the extent of permitting a deduction of the amount which the taxpayer actually paid by check for the two tax and interest items of $14,522.23 and $8,779.62 or for a total deduction of $23,301.85. The board did not allow the claimed deduction of $14,828.54 representing the overassessment refundable to the trust and which by stipulation had been applied in 1950 to the payment of taxpayer's additional Federal assessment.

We shall first consider whether the Board of Tax Appeals, in interpreting and applying § 290.10(9), erred in allowing the taxpayer a deduction for the total amount which he actually paid by check in 1950 ($23,301.85) for additional Federal income taxes for the years 1943, 1944, and 1945. It is conceded that nothing in § 290.09(2)(3) precluded the taxpayer from taking a deduction on his 1950 state return for the amount so actually paid in 1950. (This concession does not extend to the overassessment of $14,828.54 to the trust which by stipulation was credited to the taxpayer.) The commissioner contends, however, that § 290.10(9) precludes the taxpayer from taking a deduction for the additional Federal taxes so paid. Section 290.10(9) provides:

"In computing the net income no deduction shall in any case be allowed for:

\* \* \* \* \*

"(9) Expenses, *interest* and *taxes* connected with or allocable against the production or receipt of *all income not included in the measure of the tax* imposed by this Act. \* \* \*" (Italics supplied.)

In applying the above section it is not to be overlooked that the additional Federal income taxes for 1943, 1944, and 1945, for which the taxpayer sought a deduction on his 1950 state tax return, pertain to income which would also have been taxable by the state *but for the sole reason that the state statute of limitations had run for these years.*

In ascertaining the legislative intent the basic question is whether the phrase, *"income* \* \* \* included in the measure of the tax imposed by this Act"* (italics supplied), by its meaning embraces only the dollar volume of income upon which the state (regardless of the cause therefor) can and does impose an income tax, or whether the term "income," as a measure of the tax imposed, is used in the broad sense of meaning a class of income. Adopting the narrow statutory construction, the commissioner contends that income taxes paid to the Federal government are deductible in a Minnesota return only to the extent that they pertain to the same dollar volume or income taxed by the state. We conclude that the commissioner's view is erroneous.

Attempts to circumscribe the meaning of the word "income" have been unsuccessful. The word is a generic term of broad and comprehensive concept, and its specific meaning cannot be limited by any categorical definition but must be ascertained from its use in the statute under consideration.[2] Particularly in the field of income taxation the word "income" is a changing concept which may vary in its meaning according to the circumstances and the time in which it is used.[3] The history of our income tax legislation is therefore significant in ascertaining how the income concept has been used in practice and how it has been modified by later legislation.

[2] Duluth-Superior Dredging Co. v. Commr. of Taxation, 217 Minn. 346, 351, 14 N. W. (2d) 439, 443.

[3] 1 Mertens, Law of Federal Income Taxation, § 5.03.

Section 290.09(2)(3), authorizing the deduction, during the taxable year in which paid, of taxes and interests allocable against the production or receipt of gross income *assignable to this state*,[4] has been (except as to gifts) the unchanging law since the enactment of the Minnesota Income Tax Act in 1933[5] up until 1947. Not until 1947 did the legislature modify the provisions governing these tax and interest deductions. In that year § 290.10, defining nondeductible items, was amended[6] by adding thereto par. (9) which is above quoted as § 290.10(9).

In seeking legislative intent we may consider the consequences of a particular statutory interpretation. § 645.16(6). We are also guided by the presumption that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable. § 645.17(1). If we adopt the commissioner's interpretation that income which is included in the measure of the tax is limited to the actual dollar volume or net income taxed by the state, we shall have indeed brought about a consequence that is both absurd and unreasonable. For example, the Federal income tax allows a smaller medical deduction than the state. If a taxpayer—one with an average income—is entitled to only a $300 Federal medical deduction and a state deduction of $1,000, the net income subject to a Federal tax will be $700 larger than that subject to the state income tax levy. In other words, the Federal income tax will pertain to $700 of income which in dollar volume cannot be, and is not, subject to a state income tax. In short, the taxpayer will be faced with a baffling tax calculation since he must know his Minnesota net income before he can compute what percentage of his Federal tax is attributable to an identical amount of money taxed by the state, and he cannot know his Minnesota net income unless and until he knows the actual amount allowed by Minnesota as a deduction for Federal taxes paid. We cannot believe that the legislature intended to saddle the average taxpayer with such a distracting and error-producing problem.

[4] L. 1933, c. 405, § 24(a), now incorporated in § 290.18.

[5] L. 1933, c. 405, § 13(b)(c).

[6] L. 1947, c. 635, § 7.

452

The same perplexing situation may well arise as to the relatively common deduction for depreciation when there is a variance between the permissible Federal and state rates. Again, suppose the Federal government assigns income to one taxable year whereas the state does not assign that income to that year but rather to a later year; the Federal tax paid in the year that the Federal government assigns the income can then never be allowed as *a deduction in taxpayer's Minnesota return*. It is unnecessary to multiply examples to illustrate that to adopt the dollar volume theory is to ascribe to the legislature an intent to bring about an absurd and unreasonable situation which is productive of injustice, confusion, and error.

What the legislature did intend is persuasively indicated by the commissioner's own regulation, which he adopted in 1947 to implement the recently enacted § 290.10(9). This regulation reads (State of Minnesota, Commissioner of Taxation, Regulations Relating to Income Tax Act, art. 10-8):

"No deduction from gross income may be allowed for the amount of any item or part thereof allocable to a *class or classes of* any income not included in the measure of the tax imposed by this Act. For example: Expenses paid or incurred for the production or collection of *income which is wholly exempt from income taxes, such as interest and dividends of a type not includible in gross income * * ** are not deductible from gross income." (Italics supplied.) [7]

The above regulation specifically refers to a *class* or *classes* of income not included in the measure of the tax, and again, in the accompanying example, cites wholly exempt income such as interest and dividends of a type as not includible in gross income. Where a statute is ambiguous, a construction contemporary with its enactment, placed upon it by the agency charged with its administration, is entitled to considerable weight by a court in construing it. The reason for according such weight to a contemporaneous interpretative regulation is that it is relevant and material evidence of the

---

[7] For example, interest derived from certain obligations of the United States is included in gross income under Federal law, 68A Stat. 29, 26 USCA, § 103(b), but excluded from gross income under Minnesota law, § 290.08(7).

understanding and opinions of those who were charged with the responsibility of putting the statute in operation and who were familiar with, and probably active in, drafting the statute.[8]

Significant regard is also to be given to the fact that the legislature by the 1949 amendment to § 290.10(9)[9] which, though making other statutory changes, reenacted the same provision and thereby impliedly approved the commissioner's interpretation.[10] We can only conclude that the phrase "income * * * included in the measure of the tax" as used in § 290.10(9) does not refer to the net or dollar volume income actually taxed by the state but to the class or classes of income subject to taxation and that therefore Federal income taxes paid on income within such class or classes may, in the year in which they are paid, be taken as a deduction on the taxpayer's state income tax return despite the fact that the taxpayer's net income subject to state taxation, within such class or classes, embraces a smaller dollar volume.

The use by the legislature of the word *included* instead of the word *includible* is of no significance. The statute reads "all income not included in the measure of the tax *imposed by this Act*" (italics supplied), and not all income not included in the measure of the tax imposed by the commissioner. It is obvious that the income of the taxpayer was included in the measure of the tax *imposed by the act* since the same class or type of income was taxed to the taxpayer in subsequent years. It follows that the income upon which the Federal government levied an additional tax for 1943, 1944, and 1945

[8]See, Magruder v. Washington, B. & A. Realty Corp. 316 U. S. 69, 62 S. Ct. 922, 86 L. ed. 1278; Norwegian Nitrogen Products Co. v. United States, 288 U. S. 294, 53 S. Ct. 350, 77 L. ed. 796; White v. Winchester Country Club, 315 U. S. 32, 62 S. Ct. 425, 86 L. ed. 619; Davis, Administrative Law, § 57.

[9]L. 1949, c. 541, § 2.

[10]See, United States v. Cerecedo Hermanos Y Compania, 209 U. S. 337, 28 S. Ct. 532, 52 L. ed. 821; Commissioner v. Flowers, 326 U. S. 465, 66 S. Ct. 250, 90 L. ed. 203; Helvering v. Reynolds Co. 306 U. S. 110, 59 S. Ct. 423, 83 L. ed. 536; Helvering v. Reynolds, 313 U. S. 428, 61 S. Ct. 971, 85 L. ed. 1438, 134 A. L. R. 1155; United States v. Dakota-Montana Oil Co. 288 U. S. 459, 53 S. Ct. 435, 77 L. ed. 893; Davis, Administrative Law, § 59.

was *included* in the class or type of income embraced by the measure of the tax imposed by the Minnesota act.

The Board of Tax Appeals was correct in denying the taxpayer a deduction for the $14,828.54 overassessment to the trust which, by stipulation, was not refunded to the trust but was credited upon the taxpayer's deficiency obligation for 1943, 1944, and 1945. Of course, the mere fact that the Bureau of Internal Revenue did not refund it to the trustee, who then would have distributed it to the taxpayer who in turn would have paid it back to the Bureau, would not of itself preclude the taxpayer from claiming it as a deduction. The crucial point is that the taxpayer did not report the overassessed amount, for which he claimed a deduction, as income in his 1950 state income tax return. Had he done so, such added income would have canceled out his correspondingly claimed deduction. Since he cannot have his cake and eat it too, he is in no position to complain.

■ Commissioner asserts, however, that the taxpayer is now estopped to claim that the trust income, upon which the Bureau of Internal Revenue made the additional levy, was taxable income within the measure of the tax imposed by the Minnesota act since it was claimed in the returns of the trust for 1943, 1944, and 1945 that it was taxable to the trust. During this period of time the taxpayer took the same position with respect to such income. The commissioner's contention simply is that, since the taxpayer originally represented that such income was not taxable to him, he cannot now be heard to say the contrary.

It is well to bear in mind that the trustees and the beneficiaries at all times acted upon the advice of counsel and that there is no claim of any fraud with respect to their filing of income tax returns for the years in question. It has been specifically found that no misrepresentation was made which misled the Minnesota taxing authorities. It is difficult to understand how any estoppel could arise under these circumstances. It is fundamental that estoppel is based upon a representation of fact and cannot exist as to an expres-

sion of opinion as distinguished from a representation of fact.[11] Here the assertion of an estoppel must fail for the simple reason that any representation of the taxpayer was only one of legal opinion and furthermore because the Board of Tax Appeals specifically found, and its finding is sustained, that there was no representation which misled the Minnesota taxing authorities.

The decision of the Board of Tax Appeals is affirmed.

Affirmed.

[11]Helvering v. Salvage, 297 U. S. 106, 56 S. Ct. 375, 80 L. ed. 511; Ross v. Commr. of Int. Rev. (1 Cir.) 169 F. (2d) 483, 7 A. L. R. (2d) 719; Summerfield Co. 29 B. T. A. 77; 10A Mertens, Law of Federal Income Taxation, § 60.03(2).