John R. SANDBERG, Relator,

v.

**COMMISSIONER OF
REVENUE, Respondent.**

No. C5–85–1129.

Supreme Court of Minnesota.

March 7, 1986.

Ford M. Robbins, Minneapolis, for relator.

Hubert H. Humphrey, III, Atty. Gen., Amy Eisenstadt, Sp. Asst. Atty. Gen., Dept. of Revenue, St. Paul, for respondent.

YETKA, Justice.

Relator, John R. Sandberg, appeals from a decision of the Minnesota Tax Court finding him a domiciliary of the State of Minnesota during 1979–81 and, thus, responsible for Minnesota income tax for this period. We affirm the tax court.

In December 1983, the state commissioner of revenue reviewed the 1979, 1980, and 1981 non-resident tax returns of relator John R. Sandberg. Determining that during the 3-year period Sandberg had been domiciled in Minnesota, the commissioner issued orders assessing back-taxes for each of the 3 years.[1] Sandberg has business interests and investments in several states; but, prior to 1978, he was a lifelong resident of Minnesota.[2] Following his divorce in 1978, Sandberg purchased, through a sole proprietorship, a new home in Plymouth, Minnesota, in which he, his mother and his daughter lived periodically. Due to personal and business interests, Sandberg traveled extensively during 1979–81, spending approximately 115 days each year in several states and abroad, 50–60 days in Minnesota, and the remainder of each year in Texas. When in Texas, Sandberg lived in Harlingen at hotels and with friends or rented a bedroom and sitting room in Robstown from a friend on a month-to-month basis by oral agreement. He did not have a personal phone number in Texas during the period and received his mail at a post office box.

Sandberg appealed from the commissioner's orders to the Minnesota Tax Court on January 4, 1983. He maintained that the commissioner's determination concerning his domicile was unsupported by the facts and contrary to the law.[3] The commission-

1. Sandberg had not filed any state tax returns during 1979–81, but after being contacted by the commissioner, he filed non-resident returns for the period in 1983.

2. Sandberg also spent a short period in California and is presently a Nevada resident. His principal business interests during 1979–81 were: As president and sole shareholder of Metal Masters, Inc., a Minnesota corporation from which he received the bulk of his personal income; as president and sole shareholder of J.R.S. Enterprises, Inc., a Minnesota corporation; as sole proprietor of Sandberg Leasing located in Minnesota; and as a partner and investor in other Minnesota concerns and in businesses in Nevada, Arizona, California, and New Mexico. He also worked as a consultant in the aircraft industry. Sandberg had no business interests in Texas during the period in question. He had loans and a checking account with the Crystal State Bank, Crystal, Minnesota; a checking account with the Northwestern State Bank, Osseo, Minnesota; a savings account at First Federal Savings and Loan, Minneapolis, Minnesota; a checking account with the First National Bank of Mercedes, Texas; and a cash management account with Merrill Lynch.

3. Sandberg also maintained that the commissioner had wrongly calculated the amount owing since he did not carry back a $157,000 1982 net operating loss which Sandberg applied for in 1983. Sandberg moved for summary of judgment on the issue. The tax court delayed determination of this issue until resolution of the preliminary question of domicile. This is not an issue on appeal.

er filed a return and answer on January 23, 1984, denying all allegations. On February 15, 1984, the commissioner served interrogatories and a request for the production of documents on Sandberg. Sandberg responded on March 16, 1984, but he objected to the request for production of bank documents as overbroad, and the commissioner deemed certain of Sandberg's responses incomplete. By letter dated March 30, 1984, the commissioner's counsel requested that Sandberg fully answer certain interrogatories and, pursuant to an oral agreement, narrowed the request for bank documents to only those for Sandberg's personal accounts. The letter allowed Sandberg 30 days in which to respond. On April 9, 1984, before the 30-day period had run, the commissioner obtained from the tax court five subpoenas duces tecum ordering production of Sandberg's bank records from two Minnesota financial institutions, records from two insurance agencies, and financial records from VISA. The subpoenas were obtained *ex parte*, and Sandberg's counsel learned of them either through notification by the institutions subpoenaed or at trial.[4]

On June 22, 1984, Sandberg moved the tax court for an order directing the commissioner to return all information obtained pursuant to the subpoenas, enter judgment in favor of Sandberg, censor opposing counsel, and award attorney fees and costs. On July 10, 1984, the tax court conducted a hearing at which Sandberg argued that, since he had received no notice of the subpoenas duces tecum for his bank records, the subpoenas were improperly issued and provided the commissioner with wrongfully obtained information that would prejudice Sandberg's case. The tax court denied the motion on July 13, 1984,

finding that the rules of civil procedure do not require prior notice to a litigant when a subpoena is directed to a third party. Since these were subpoenas in a civil action and Sandberg had actual notice of the subpoenas within 180 days of their issuance, the court further found that there had been no violation of Minn.Stat. §§ 13A.02, subd. 3 and 13A.04, subd. 4 (1984) governing the release of financial information to government officials.

The tax court conducted its hearing on Sandberg's original petition on November 20, 1984. At the hearing, Sandberg testified as to his living situations in Minnesota and Texas during 1979–81 and maintained that he was a domiciliary of Texas during the period. Also testifying were Randall Sohn and Thomas Lipinski, friends of Sandberg, and Richard T. Coughlin, general manager at Metal Masters, who stated that they believed Sandberg's place of residency during 1978–81 was Texas.[5] At the hearing, Sandberg continued his objection to the admission of evidence obtained from the financial institutions and also objected to the introduction of the insurance documents, arguing that he had no notice of the subpoenas used to obtain the evidence and, therefore, the evidence should not be admitted. The court overruled the objection and admitted the documents.

On March 18, 1985, the tax court confirmed the commissioner's orders, finding that Sandberg was a resident and domiciliary of Minnesota during 1979–81. *Sandberg v. Commissioner of Revenue*, No. 4031, slip op. (Minn.Tax Ct. Mar. 18, 1985). Although Sandberg claimed that Texas was his domicile during 1979–81, the court found this not to be credible in light of his actions. Employing the factors for determining domicile set forth in Minn. Rules

---

**4.** On April 26, 1984, Sandberg's counsel learned from the bank itself of the subpoena issued to Crystal State Bank. He did not know of the subpoena issued to First Federal until informed by the commissioner's counsel on May 8, 1984. The insurance company subpoenas did not come to light until trial.

**5.** The record also includes depositions of Maxine Smodell, Sandberg's secretary at Metal Masters, and of his daughter, Janet Sandberg. Smodell's testimony concerned Sandberg's relationship with Metal Masters during the period in question and Janet Sandberg's testimony centered on her occupancy of Sandberg's house in Plymouth. Both maintained that Sandberg was not a continual resident of Minnesota during 1978–81.

8001.0300 (1985), the tax court based its findings primarily on Sandberg's living situation in Texas during 1979–81, his ownership and use of his house in Plymouth, and his relationship to his Minnesota businesses. The tax court also considered other personal contacts in the state during the period in question, including his driver's license, vehicle registration and insurance, medical care, personal relationships, and personal financial dealings. Based on these findings, the court affirmed the commissioner's orders and ruled that Sandberg remained a domiciliary of Minnesota during 1979–81, with his entire income for the period of January 1, 1979, through December 31, 1981, subject to Minnesota taxation under Minn.Stat. § 290.17, subd. 2 (1984).

Sandberg moved for a new trial on April 3, 1985, alleging that the court's findings were contrary to the facts and the law and based in whole or in part on evidence obtained in violation of the rules of civil procedure. The court conducted a hearing on April 17, 1985, and denied the motion on May 9, 1985, finding that its order was correct under the law, justified by the evidence, and not based upon improperly admitted evidence.

Sandberg petitioned this court for a writ of certiorari, which was granted on June 13, 1985.

The issues raised on appeal are:

I. Did the tax court commit error in admitting certain documentary evidence?

II. Was the tax court correct in finding that Sandberg was a domiciliary of Minnesota during 1979–81?

Sandberg maintains that, at the November 20, 1984 hearing, the tax court improperly admitted certain documentary evidence consisting of a homeowner's insurance policy application, bank documents, and investigative reports. This evidence was obtained pursuant to the series of subpoenas duces tecum issued *ex parte* by the tax court. Since he had no notice of the subpoenas, Sandberg argues that the admission of the evidence denied him his right to equal discovery, prejudiced his ability to

prepare his case, and was in violation of Minn.R.Civ.P. 45 governing the issuance of subpoenas and Minn.Stat. § 13A.04, subd. 4(c) (1984) regulating the release of financial information to government officials. The commissioner replies that the tax court has the power to vary the rules of civil procedure and also has the explicit statutory authority to issue such subpoenas *ex parte*. Furthermore, the commissioner argues that even if the documents were improperly obtained, any error committed was not prejudicial.

■ While Minn.R.Civ.P. 34.03 allows independent action for production of documents against a non-party, the rules of civil procedure also provide:

(1) Every subpoena shall be issued by the clerk under the seal of the court, shall state the name of the court and the title of the action, and shall command each person to whom it is directed to attend and give testimony at a time and place therein specified. The clerk shall issue a subpoena, or a subpoena for the production of documentary evidence or tangible things, signed and sealed, but otherwise in blank, to a party requesting it, who shall fill it in before service.

(2) Subpoenas shall be issued only in connection with a duly noted deposition as set forth in Rule 45.04 or in connection with a hearing or trial as set forth in Rule 45.05. Violation of this provision constitutes an abuse of process, and shall subject the attorney or party to appropriate sanctions or damages.

Minn.R.Civ.P. 45.01. The advisory committee notes explain that the requirements of Rule 45.01, subd. 2 are designed to guard against *ex parte* discovery:

[Rule 45.01(2)] makes clear the limits of proper use of subpoenas by attorneys. The Committee is aware of instances in which an attorney obtains a subpoena and then uses it for *ex parte* discovery or investigation. Such use of the subpoena has never been proper under the rules, and is an abuse which is prevalent enough to require specific attention.

The rule makes it clear that use of a subpoena to compel the attendance of a non-party is appropriate only in conjunction with a properly noticed deposition or hearing. If the deposition is not properly scheduled, with proper notice to all parties to the action, the attorney has abused the subpoena power.

In the present case, the subpoenas were not issued in connection with a deposition, but were obtained to aid the commissioner in discovery. The tax court justified the issuance of the subpoena on grounds that it had the authority to vary the rules of civil procedure. Under Minn.Stat. § 271.06, subd. 7 (1984), the tax court may, to a limited extent, vary the rules of civil procedure: "The rules of civil procedure for the district court of Minnesota shall govern the procedures in the tax court, *where practicable.*" (Emphasis added.) In implementing this power, however, Minn. Rules 8600.-0400 (1985) provides:

> Unless otherwise herein provided, the practice and procedure before the court shall be substantially such as obtains in the district courts of this state. The court, however, reserves the right to vary such practice and procedure by the incidental suspension of the more rigid forms of pleadings, practice, and evidence, when in its opinion the best interests of the parties involved may be thereby served or the determination of the cause expedited.

From this provision, the tax court found that it had the authority to issue subpoenas to third parties without notice to the other party to the action. In addition, the commissioner argues that the tax court has the explicit statutory authority to issue subpoenas in such a manner under Minn.Stat. § 271.13 (1984), which provides: "The commissioner of revenue, the tax court, and each judge of the tax court shall, respectively, have power to subpoena * * *. Subpoenas for witnesses or the production of documentary evidence shall be issued at the request of any party to the proceeding."

The authority of the tax court to vary the rules of civil procedure is not absolute. The rules of civil procedure strongly guard against *ex parte* discovery, and the tax court has adopted no rule waiving the requirements of Rule 45.01. The requirement that subpoenas be issued in connection with a deposition or hearing (*i.e.,* that the other party have notice of the subpoena) is not an "incidental suspension of the more rigid forms of pleadings, practice and evidence" under Minn. Rules 8600.-0400. The tax court also made no finding that such subpoenas were in "the best interests of the parties involved" or that they "expedited" the case. Furthermore, Minn. Stat. § 271.13 only gives the court the authority to issue subpoenas; it does not allow for their *ex parte* issuance. If, indeed, the tax court were to vary the rules of civil procedure in such a manner, it certainly did not do so here since no rule allowing for the *ex parte* issuance of subpoenas has ever been adopted.

While we are not required to decide the constitutionality of any future rule allowing for the issuance of *ex parte* subpoenas, we doubt the legislature ever intended to grant the tax court the authority to issue subpoenas to third parties without notice to other litigants. Furthermore, if the legislature were to give such authority to the tax court, there arises a serious doubt as to the constitutionality of such an *ex parte* rule in light of the due process clauses of the federal and state constitutions.

As a general principle, each litigant has equal discovery rights. *See Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Krech v. Erdman,* 305 Minn. 215, 233 N.W.2d 555 (1975); *Jeppesen v. Swanson,* 243 Minn. 547, 68 N.W.2d 649 (1955). The purpose of the discovery rules is to prevent unjust surprise so that all relevant facts may be ascertained before trial. *Fritz v. Arnold Manufacturing Co.,* 305 Minn. 190, 194, 232 N.W.2d 782, 785 (1975). The rules of discovery were adopted over 30 years ago in order to eliminate the gamesmanship that formerly existed where attorneys would withhold wit-

nesses and documents in order to surprise opposing counsel at the trial. *See Fritz*, 305 Minn. 190, 232 N.W.2d 782; *Gebhard v. Niedzwiecki*, 265 Minn. 471, 122 N.W.2d 110 (1963); Louisell, *Discovery and Pre-Trial Under the Minnesota Rules*, 36 Minn.L.Rev. 633 (1952). It was urged by the bench and the bar and decided by the Minnesota Supreme Court in 1952 that the ends of justice were best served if opposing counsel were each fully aware of all the evidence that the other would introduce and, thus, be better prepared to respond to such evidence. This would enable the trial court to have all pertinent information before it at the time a decision is made. We believe that the reasons against *ex parte* discovery advanced in 1952 apply with equal force today.

If the attorney general believes that the interrogatories and the notice of deposition have not elicited all of the evidence that is believed to exist, it is a simple matter to move the tax court to compel discovery under Minn.R.Civ.P. 37.01. This procedure assures proper notice to the taxpayer and his attorney.

■ Accordingly, we find that it was improper for the assistant attorney general to secure *ex parte* subpoenas in this action. The tax court has adopted no rule waiving the requirements of Minn.R.Civ.P. 45.01. There is no statutory authority for such an action, and to conduct discovery in such a manner raises serious constitutional problems.

■ The next question, however, is whether the taxpayer's case was prejudiced by the assistant attorney general's actions. We think the answer is clearly in the negative. The taxpayer's counsel, at oral argument, candidly admitted that he no longer objected to the documentary evidence secured by the subpoenas. It was not the content to which he objected, but rather the way the evidence was secured which he maintains "poisoned" the entire atmosphere of the trial, leaving the tax court with the impression that the taxpayer was evasive and not credible. While we find the actions of the assistant attorney general to have been improper, we also do not believe that the experienced and learned tax court judge who heard this matter is incapable of erasing such incidents from his mind and deciding the case on the merits. If this case had been a jury trial, we would not hesitate to reverse. We are less compelled, however, to overturn a case on grounds of improperly admitted evidence when the case was tried to the court. *See Pump-It, Inc. v. Alexander*, 230 Minn. 564, 42 N.W.2d 337 (1950). Trial judges are trained to separate proper from improper evidence and erase improper actions of counsel from their minds in deciding questions of law and fact. The documents secured by the subpoenas constituted only a small portion of the evidence before the tax court. We believe the tax court properly considered all the evidence and nothing would be gained, in our opinion, by remanding for a new hearing.[6]

Sandberg's next major contentions are that the tax court applied the wrong law in determining that he was a domiciliary of Minnesota during the period in question and that the findings were not supported by the facts.

■ Under Minn.Stat. § 290.17 (1984), the income of resident taxpayers is assigned to Minnesota for income tax purposes. Minn.Stat. § 290.01, subd. 7 defines resident taxpayer as "any individual domi-

---

6. Sandberg further argues that the bank documents admitted at trial were also obtained in violation of the Release of Information by Financial Institutions Act. Minn.Stat. §§ 13A.01-.04 (1984). The law requires official notice within 180 days after the release of private financial information to government officials not done pursuant to a subpoena issued under the rules of civil procedure. Minn.Stat. § 13A.03, subd. 3. The record shows that the commissioner did give the minimum notice required by law, at least when initially contacted by Sandberg's counsel. Sandberg further argues that certain Department of Revenue investigative reports used at trial were hearsay and, while properly admitted, nonetheless, cannot be used as a sole basis for a finding of fact. Properly admitted hearsay, however, has probative value. *See Nelson v. O'Neil Amusements*, 274 Minn. 555, 142 N.W.2d 647 (1966).

ciled in Minnesota * * * during any portion of the tax year who shall not, during the whole of such tax year, have been domiciled outside the state." Domicile is defined as follows:

The term "domicile" means the bodily presence of an individual person in a place coupled with an intent to make such a place one's home. The domicile of any person shall be that place in which that person's habitation is fixed, without any present intentions of removal therefrom, and to which, whenever absent, that person intends to return.

Minn. Rules 8001.0300, subp. 2; *see Miller v. Commissioner of Taxation*, 240 Minn. 18, 19, 59 N.W.2d 925, 926 (1953). Once a domicile is established, it is presumed to continue until establishment of a new domicile is proved:

A person who leaves home to go into another jurisdiction for temporary purposes only is not considered to have lost that person's domicile. But if a person moves to another jurisdiction with the intention of remaining there permanently or for an indefinite time as a home, that person shall have lost that person's domicile in this state. * * *

    *    *    *    *    *    *

The mere intention to acquire a new domicile, without the fact of physical removal, does not change the status of the taxpayer, nor does the fact of physical removal, without the intention to remain, change the person's status. The presumption is that one's domicile is the place where one lives. An individual can have only one domicile at any particular time. A domicile once shown to exist is presumed to continue until the contrary is shown. An absence of intention to

abandon a domicile is equivalent to an intention to retain the existing one.

Minn. Rules 8001.0300, subp. 2. *See also Commissioner of Revenue v. Stamp*, 296 N.W.2d 867 (Minn.1980). A person can live in another state for a period of time, but shall be considered a domiciliary of Minnesota if he has not, through his acts, demonstrated his intent to establish a new domicile. *See Stamp*, 296 N.W.2d 867; *Miller*, 240 Minn. 18, 59 N.W.2d 925. To determine whether a person has established a new domicile, the court must not only consider words, but must also evaluate actions: "[W]here there are definite statements of intent to make a new abode one's home, the trier of fact may consider the acts and circumstances of that person in evaluating the sincerity of the announced intent." *Stamp*, 296 N.W.2d at 869. *See also* Minn. Rules 8001.0300, subp. 2, which provides: "No positive rule can be adopted with respect to the evidence necessary to prove an intention to change a domicile but such intention may be proved by acts and declarations, and of the two forms of evidence, acts shall be given more weight than declarations." In evaluating a party's actions, the tax court is to consider the series of factors set forth in Minn. Rules 8001.0300, subp. 3.

In evaluating Sandberg's actions, the tax court followed these general rules and clearly used the factors for determining domicile set forth in Minn. Rules 8001.0300.[7] The tax court applied the correct law to the facts of the case, and this court will not disturb the fact findings of the tax court when the decision is supported by sufficient evidence. *See Nagaraja v. Commissioner of Revenue*, 352 N.W.2d 373 (Minn.1984). When the evi-

---

**7.** This court has stressed that a party does not need to prove *abandonment* of present domicile, but, instead, rebuts the presumption that he or she has not changed domicile by proving establishment of domicile in another jurisdiction. *Stamp*, 296 N.W.2d at 870. While the tax court did, at some points in its memorandum, speak in terms of abandonment, the clear purpose of its analysis was to determine whether Sandberg's acts show that he intended to establish Texas as his new domicile. As the tax court

stated in its findings of fact and conclusions of law: "The facts of this case show that appellant, through his actions, continued to have close ties to the State of Minnesota. In comparison, the connections made to Texas are at best, tenuous. Appellant, by his acts, has not met his burden of proof in showing the intent to establish a domicile in Texas." In such circumstances, the mere use of the term "abandonment" does not mean that the tax court applied the wrong law. *Stamp*, 296 N.W.2d at 870.

dence is such that the tax court could reasonably reach its determination, the decision will be affirmed. *Red Owl Stores, Inc. v. Commissioner of Taxation,* 264 Minn. 1, 5, 117 N.W.2d 401, 405 (1962). In the present case, the evidence is such that the tax court could reasonably conclude that Sandberg was a domiciliary of Minnesota for tax purposes during 1979–81.

The tax court is affirmed.