Carol **DREYLING**, et al., Relators,

v.

**COMMISSIONER OF REVENUE,**
Respondent.

No. A05–970.

Supreme Court of Minnesota.

March 30, 2006.

John E. Mack, Mack & Daby, P.A., New London, MN, for Relators.

Michael Hatch, Minnesota Attorney General, Craig R. Anderson, Assistant Attorney General, Minnesota Commissioner of Revenue, Daniel A. Salmone, St. Paul, MN, for Respondent.

## OPINION

ANDERSON, RUSSELL A., Chief Justice.

Relators Roger and Carol Dreyling appeal a tax court judgment affirming an order of the Commissioner of the Minnesota Department of Revenue (the commissioner) assessing additional income taxes, penalties, and interest for tax years 1998, 1999, and 2000.[1] We affirm the judgment of the tax court as to the additional income taxes, interest, and penalties assessed for substantial underpayment under Minn. Stat. § 289A.60, subd. 4 (2004), but reverse as to the assessment of penalties for fraud under Minn.Stat. § 289A.60, subd. 6 (2004).

---

1. Carol Dreyling is a named party because the Dreylings filed joint income tax returns, but she acknowledges that she was a Minnesota resident during the years in question and she has not participated in this case.

Roger Dreyling (Dreyling) was born and raised in Minnesota. He and Carol married in 1958. In 1966, Dreyling graduated from medical school. Shortly thereafter, Dreyling established a medical practice in Paynesville, Minnesota. Since 1981, the Dreylings have owned a home in Paynesville that they treat as their homestead for property tax purposes.

After he retired from the full-time practice of medicine in 1997, Dreyling entered into temporary employment agreements with two tribal organizations in Alaska. Under these agreements, Dreyling obtained an Alaska medical license and worked as a physician in Alaska for 26 days in 1998 and 68 days in 1999. He spent the balance of each year traveling in Alaska, at his home in Minnesota and in Florida, where the couple also owned a home. Carol Dreyling continued to live and work as a piano teacher in Paynesville, although she traveled with her husband on a few occasions. While in Alaska, Dreyling lived in temporary housing provided rent-free by his employers. He used a mailbox rented from Mail Boxes Etc. as his Alaska mailing address, but his paychecks were sent to his home in Paynesville. Dreyling continued to maintain a Minnesota physician's license and took continuing medical education courses in Minnesota in 1998 and 1999. Dreyling obtained an Alaska driver's license but never physically surrendered his Minnesota license. Although Dreyling registered to vote in Alaska, he never did so. Dreyling titled a car in Alaska, but it was insured under his Minnesota policies. Dreyling's insurance, banking, and financial relationships were centered in Minnesota, and he never joined any clubs or community organizations in Alaska. Nor did Dreyling ever acquire any real property in Alaska, although he testified he considered the possibility. In 2000, Dreyling's health began to fail, and after 2000, he was no longer employed as a physician in Alaska.[2]

For 1998, 1999, and 2000, Dreyling and Carol filed joint income tax returns indicating that Carol was a resident of Minnesota and Dreyling was a resident of Alaska. Before filing these returns, Dreyling reviewed the criteria for nonresident taxpayer status provided by his tax preparer. Dreyling independently determined that he was not a resident of Minnesota in 1998, 1999, and 2000, and reported his income for those years as nonresident income not subject to Minnesota income tax. But the commissioner audited the Dreylings' income tax returns and determined that Dreyling *was* a resident of Minnesota in 1998, 1999, and 2000. Because Minnesota residents are not entitled to allocate any portion of their income to another jurisdiction, the commissioner assessed additional income taxes, underpayment and fraud penalties, and interest totaling $30,905.19. Dreyling appealed to the tax court from the commissioner's order of October 10, 2003. *Dreyling v. Comm'r of Revenue*, No. 7622–R, 2005 WL 473893, at *1 (Minn. T.C. Oct. 10, 2003). The tax court found that Dreyling was a resident of Minnesota in 1998 and 1999,[3] and affirmed in all respects the commissioner's order assessing penalties. *Id.* at *1–2.

Dreyling appeals from the tax court's judgment, contending that he is entitled to

---

**2.** Dreyling testified that he developed symptoms of cardiac problems that culminated in a six-vessel cardiac bypass in 2002. He also testified to a total knee replacement in 2001, aggravated by the Alaskan weather. In addition, at trial he wore a brace on his right foot.

**3.** Before trial in the tax court, Dreyling conceded that he was a resident of Minnesota in 2000. In this action, Dreyling is still contesting the fraud penalty imposed for that year.

nonresident taxpayer status and reversal of the fraud penalties. We conclude that the tax court's finding that Dreyling was a Minnesota resident in 1998 and 1999 was justified by the evidence. But we also conclude that the tax court's finding that Dreyling failed to prove that fraud penalties were improper was not justified by the evidence.

### I.

The taxpayer bears the burden of demonstrating that the commissioner's assessment is incorrect or invalid. Minn. Stat. § 270.68, subd. 3 (2004) (repealed and recodified in 2005 at Minn.Stat. § 270C.61, subd. 4); Minn.Stat. § 289A.37, subd. 3 (2004) (repealed and recodified in 2005 at Minn.Stat. § 270C.33, subd. 6); *F–D Oil Co., Inc. v. Comm'r of Revenue*, 560 N.W.2d 701, 707–08 (Minn.1997). We review a decision of the tax court to determine if it is not justified by the evidence or not in conformity with the law. Minn.Stat. § 271.10, subd. 1 (2004); *Wybierala v. Comm'r of Revenue*, 587 N.W.2d 832, 835 (Minn.1998). When reviewing the tax court's findings of fact, we determine whether sufficient evidence exists to support the tax court's decision. *Wybierala,* 587 N.W.2d. at 835. The tax court is in the best position to evaluate the credibility of witnesses. *Manthey v. Comm'r of Revenue,* 468 N.W.2d 548, 550 (Minn.1991). Issues of law, however, we review de novo. *Wybierala,* 587 N.W.2d at 835.

### II.

All net income of resident taxpayers is subject to Minnesota income tax. Minn. Stat. § 290.014, subd. 1 (2004). Nonresidents, but not residents, may allocate a portion of their income to other jurisdictions. Minn.Stat. § 290.17, subd. 1 (2004). A "resident" can be either "any individual domiciled in Minnesota" or "any individual domiciled outside the state who maintains a place of abode in the state and spends in the aggregate more than one-half of the tax year in Minnesota." Minn.Stat. § 290.01, subd. 7 (2004). Spouses are presumed to have the same domicile unless there is affirmative evidence to the contrary or the spouses are legally separated or divorced. Minn. R. 8001.0300, subp. 2 (2005).

Dreyling argued below that he was not a resident of Minnesota in 1998 and 1999 under either test because (1) he was not domiciled in Minnesota, and (2) although he maintained a "place of abode" in the state, he was not domiciled here and did not spend more than one-half of either year in Minnesota.

"Domicile" means bodily presence in a place coupled with an intent to make that place one's home. *Miller's Estate v. Comm'r of Taxation,* 240 Minn. 18, 19, 59 N.W.2d 925, 926 (1953). Once established, a domicile is presumed to continue until the contrary is shown. Minn. R. 8001.0300, subp. 2. As a result, one may live in another state for a period of time without affecting one's Minnesota domicile. *See Comm'r of Revenue v. Stamp,* 296 N.W.2d 867, 870 (Minn.1980).

Because Dreyling does not dispute that he was bodily present in Minnesota during the years in question, his intent to change his domicile is the determinative issue. Rules promulgated by the commissioner establish 26 nonexclusive factors to aid in the determination of domicile. Minn. R. 8001.0300, subpt. 3 (2005).

In *Manthey,* we affirmed the tax court's finding that a pipeline worker did not change his domicile from Minnesota to Alaska even though he spent most of his time in Alaska, purchased real estate in Alaska, engaged in everyday commerce in Alaska, received hiring preferences as a

certified Alaska resident, received dividends from the Alaska Permanent Fund, obtained an Alaska driver's license, registered and licensed his car and trailer in Alaska, purchased resident hunting and fishing licenses in Alaska, registered to vote and voted in Alaska elections, performed jury duty in Alaska, joined a fraternal organization in Alaska, and only traveled to Minnesota to visit his wife and children for 4 to 6 weeks of the year in 8 out of the 9 years he lived in Alaska. 468 N.W.2d at 549.

In comparison, Dreyling worked in Alaska on a strictly temporary basis, used a rented mailbox from Mail Boxes Etc. as his Alaska address, obtained an Alaska driver's license (using his address at Mail Boxes Etc.), obtained Alaska resident fishing and hunting licenses, never voted in Alaska, and registered one motor vehicle in Alaska in 1999 (which he sold in Minnesota in that same year). *Dreyling*, 2005 WL 473893, at *1–2. Dreyling concedes that he was not eligible to receive dividends from the Alaska Permanent . Fund and that he never purchased real property in Alaska. And, like Manthey, Dreyling financially supported his wife in Minnesota, owned and licensed motor vehicles in Minnesota, owned real property in Minnesota, continued to maintain banking accounts in Minnesota, and left Alaska for good when he suffered health problems. Like Manthey, Dreyling's wife remained a domiciliary of Minnesota.

The tax court found that Dreyling was domiciled in Minnesota in 1998 and 1999. *Dreyling*, 2005 WL 473893, at *6. The tax court then concluded that because Dreyling was domiciled in Minnesota in 1998 and 1999, he was a resident of Minnesota for tax purposes in those years as well. *Id.* at *10; *see also* Minn.Stat. § 290.01, subd. 7 (providing that a "resident" includes "any individual domiciled in Minnesota").

Dreyling argues that, of the factors listed in Minn. R. 8001.0300, subp. 3, the sheer quantity of factors favoring nondomiciliary status outweighs the factors favoring domicile in Minnesota.[4] Nothing in either the statute or the rules supports such a formulaic approach. Rather, as Rule 8001.0300, subp. 2, provides: "No positive rule can .be adopted with respect to the evidence necessary to prove an intention to change a domicile but such intention may be proved by acts and declarations, and of the two forms of evidence, acts must be given more weight than declarations." As we have observed, each case turns on its own peculiar facts and circumstances. *Stamp*, 296 N.W.2d at 870.

Dreyling also argues on appeal that he has met his burden of proving that he was not domiciled in Minnesota because the quality of factors he claims favor nondomiciliary status[5] outweigh the factors he concedes favor domicile in Minnesota.[6] We reject any attempt to elevate the importance of one factor over another. As Rule

---

**4.** Dreyling claims that, of the 26 factors listed in the rule, ten factors favor non-domicile, two factors clearly favor Minnesota domicile, another two or three somewhat favor Minnesota domicile, and the rest are either inapplicable or do not favor one domicile over the other.

**5.** Dreyling claims the following factors are among those favoring domicile in Alaska: "location of employment," "location of newly acquired living quarters whether owned or rented," "jurisdiction in which a valid driver's license was issued," and "location of business relationships and the place where business is transacted."

**6.** Dreyling agrees that "location of social, fraternal or athletic organizations or clubs" and "whether resident or nonresident hunting and fishing licenses were purchased [in 1999]" favor Minnesota domicile.

8001.0300, subp. 3, specifically provides, "Any one of the items listed above will not, by itself, determine domicile." Taking the factors under Rule 8001.0300, subp. 3, as a whole, we conclude that the tax court's finding that Dreyling failed to meet his burden of proving that he was not a resident of Minnesota in 1998 and 1999 was justified by the evidence. We therefore affirm that, for tax purposes, Dreyling was a resident of Minnesota in 1998 and 1999.

### III.

Dreyling also argues that even if we hold that he was a resident of Minnesota in 1998 and 1999, the fraud penalties imposed for 1998, 1999 and 2000 should be reversed. We agree. "If a person files a false or fraudulent return, or attempts in any manner to evade or defeat a tax or payment of tax, there is imposed on the person a penalty equal to 50 percent of the tax." Minn.Stat. § 289A.60, subd. 6 (modified in 2005 to read: "If a person, with intent to evade or defeat a tax or payment of tax * * * files a false or fraudulent return, or attempts in any other manner to evade or defeat a tax or payment of tax, there is imposed on the person a penalty equal to 50 percent of the tax.") Once assessed, the taxpayer bears the burden of proving that a fraud penalty is improper. *Wybierala,* 587 N.W.2d at 837 (citing *F–D Oil Co.,* 560 N.W.2d at 708).

According to the evidence introduced at trial, Dreyling was audited as part of the "CRV project," the nature of which was not disclosed at trial. According to the commissioner's audit log and time summary, the commissioner assessed fraud penalties against Dreyling for five reasons:

Taxpayer made false statements, evasive response and attempts to mislead. The return is incorrect to such an extent and in respect to items of such character and magnitude as to compel one to conclude that the underreporting was known and deliberate. There is a pattern of consistent failure to fully report Minnesota income. Taxpayer has a high level of education. Taxpayer had ability to pay the correct tax due.

The department conceded at trial the only false statement Dreyling made was filing as a nonresident. As to the second and third reasons, the department does not contend that Dreyling deliberately omitted or attempted to conceal items of his gross income. *Dreyling,* 2005 WL 473893, at *12. Rather, the department contends that Dreyling intentionally misallocated a portion of his taxable income for each year to Alaska. We do not equate this with the type of knowing and deliberate underreporting of income that often constitutes fraud. Nor can we equate this dispute to "a pattern of consistent failure to fully report income." Dreyling fully disclosed all income. His dispute with the commissioner revolves around a single issue-residency-that affects the classification of that income and affects multiple years, but it is still only one dispute. As to the fourth factor cited by the department, Dreyling may have a high level of education, but it is not in business, accounting, or tax. Nor do we agree that taxpayers who have "the ability to pay the correct tax due" are more likely to have the requisite state of mind than those who are unable to pay the correct tax due.

The tax court found that Dreyling failed to prove that fraud penalties were improper, essentially because (1) Dreyling was a sophisticated taxpayer who reviewed the criteria for nonresident taxpayer status before filing his returns, (2) Dreyling filed as a nonresident despite the lack of substance to his claim that he was domiciled in Alaska, (3) Dreyling's allocation of income to Alaska resulted in a persistent and substantial understatement of his Minnesota

taxable income, and (4) Dreyling's conduct during the audit, and the records he supplied, were inadequate to disprove the foregoing. *See Dreyling*, 2005 WL 473893, at \*12–13.

We conclude that Dreyling met his burden to prove that a fraud penalty was improper under the facts here. Dreyling testified that he first considered moving to Alaska upon graduation from medical school in 1965, but that he rejected the idea because at the time he and his wife had four young children and Alaska lacked educational opportunities for them comparable to those in Minnesota. Dreyling testified that, after his retirement from practice in Minnesota, he wanted to move to Alaska permanently, but was reluctant to sever all of his ties to Minnesota without knowing whether his move to Alaska would "work out." As it turns out, Dreyling stopped practicing medicine in Alaska after 2000 for health reasons, and not because the move to Alaska did not otherwise "work out."

As Dreyling testified, he reviewed the criteria for nonresident taxpayer status before filing his returns, and concluded he qualified as a nonresident. Dreyling's tax preparer also testified that, in the preparer's opinion, Dreyling satisfied at least some of the criteria listed in Minn. R. 8001.0300. Dreyling reported all of his Alaskan income, disagreeing with the commissioner only over his residency. There was no evidence Dreyling had ever been audited, or paid any penalties for understating his income or filing late, until the returns in question here.

While we do not condone a taxpayer's failure to cooperate completely with the commissioner, Dreyling maintained at least some records to document his out-of-

state residence, and produced the bulk of the documents requested by the commissioner. Dreyling testified he did not produce documentation for 1998 because he believed that year was beyond the statute of limitations.[7] But Dreyling did produce copies of his credit card statements showing his purchases in 1999 and 2000. The commissioner never subpoenaed any of Dreyling's records, and Dreyling's refusal to produce all available documentation supporting his out-of-state travel was appropriately construed against him in calculating the number of days he was present in the state. *See Blumberg v. Palm*, 238 Minn. 249, 254, 56 N.W.2d 412, 415 (1953) (failure to produce evidence within the control of a party permits an inference that the evidence, if produced, would be unfavorable to the party). When Dreyling realized he was not out of the state for the required number of days in 2000, Dreyling readily conceded the issue.

Dreyling testified to these matters under oath and denied that, in claiming nonresidency, he intended to defraud the state. While we ordinarily defer to the trial court on matters of credibility, here the tax court made no finding that Dreyling's testimony in this respect was not worthy of belief. Dreyling's denial, while self-serving, is supported by the circumstantial evidence of his intent.

We conclude that the tax court's finding that Dreyling failed to prove that fraud penalties were improper was not justified by the evidence. We therefore reverse the imposition of fraud penalties. The record reflects that Dreyling has paid the penalties assessed under Minn.Stat. § 289A.60, subd. 4, for substantially understating his Minnesota taxes.

Affirmed in part, reversed in part.

---

**7.** The statute of limitations for assessment of taxes is three and one-half years from the time a return is filed, but this limit does not apply to fraudulent returns. Minn.Stat. § 289A.38, subds. 1, 5 (2004).

GILDEA, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.