Carol DREYLING, et al., Relators,

v.

COMMISSIONER OF REVENUE,
Respondent.

No. A08–274.

Supreme Court of Minnesota.

July 31, 2008.

John E. Mack, Mack & Daby, PA, New London, for relators.

Lori Swanson, Attorney General, Kyle R. Gustafson Assistant Attorney General, for respondent, Commissioner of Revenue.

## OPINION

DIETZEN, Justice.

Relators Carol and Roger Dreyling challenge the decision of the Minnesota Tax Court affirming an order of the Minnesota Commissioner of Revenue (Commissioner) assessing additional income tax and interest arising out of joint income tax returns filed by the Dreylings for taxable years 2001 and 2002. The Dreylings argue that the tax court erred in concluding that Roger Dreyling was a Minnesota resident for income tax purposes. We affirm.

Roger was born and raised in Minnesota, and married Carol in 1958. In 1966 he graduated from medical school, and later he established a medical practice in Paynesville, Minnesota. In 1981 the Dreylings purchased a home in Paynesville that they treated as their homestead for property tax purposes until 2001. Beginning in 2001, the Dreylings claimed that Roger was a Florida resident for tax purposes. In their joint tax returns for tax years 2001 and 2002, Carol identified herself as a Minnesota resident,[1] but Roger claimed to be a resident of Florida and a nonresident of Minnesota.

The Commissioner audited their 2001 and 2002 income tax returns. The parties disputed the number of days in 2001 and 2002 that Roger was in Minnesota. The Dreylings claimed that Roger was absent

from Minnesota for at least 183 days in 2001 and 2002. He relied on credit card receipts and telephone records to calculate the number of days he had spent in Minnesota. One of the credit cards was in the name of the Dreylings' late son, Mark Dreyling. The Commissioner refused to consider the credit card records in determining Roger's residency because "two individuals ha[d] rights to use the credit card." Following the audit, the Commissioner concluded that Roger was a resident of Minnesota for income tax purposes and assessed additional income tax and interest for taxable years 2001 and 2002. The Dreylings appealed, and a trial was held in tax court.

At trial, the testimony focused on Roger's residency in 2001 and 2002. The material facts were largely undisputed. The Dreylings owned real property in both Minnesota and Florida. In Minnesota, the Dreylings owned residential properties in Paynesville and Biwabik, both purchased in the early 1980s; two lots near Moose Lake in northern Minnesota; and a commercial lot in Paynesville. In 2001, the Dreylings changed their homestead from the Paynesville property to the Biwabik property. The Dreylings also owned an 80–acre farm near Paynesville from which they received $1,800 a year through the Conservation Reserve Program. The Dreylings purchased insurance in Paynesville for their Minnesota real estate. The Dreylings purchased residential property in Punta Gorda, Florida, in 1999. The Dreylings also owned three undeveloped residential lots in Florida in 2001 and 2002. They purchased insurance for their Florida home in Florida and paid Florida real estate taxes. The Dreylings owned a num-

---

1. Carol's residency is not at issue in this appeal. She is named as a party because the     Dreylings filed jointly.

ber of vehicles registered and licensed in Minnesota. Also, they owned an automobile licensed and insured in Florida.

On August 2, 2001, Roger renewed his Minnesota driver's license because he intended to reestablish residency in Minnesota. Roger testified that he changed his mind about retaining Minnesota residency in August or September of 2001, when he learned that he could become a Florida resident without losing his Minnesota homestead election. On September 6, 2001, Roger obtained a Florida driver's license and had his Minnesota driver's license clipped to invalidate it. That same day he registered to vote in Florida. Roger also obtained resident hunting and fishing licenses in Minnesota during the time period in question. Carol had a Minnesota driver's license in 2001 and 2002.

Roger maintained his license to practice medicine in Minnesota in 2001 and 2002. In 2001 Roger took 32.5 credit hours of continuing professional education in Minnesota, and in 2002 he took approximately 75 credit hours through correspondence courses while he was in Florida. He utilized a Florida placement agency to occasionally practice medicine at Minnesota hospitals. Roger received payment for his medical services through the Florida agency. He performed no professional services in Florida.

As to financial matters, Roger maintained checking accounts in both Minnesota and Florida during the taxable years in question. Also, he maintained investment and retirement accounts through a brokerage firm in Minnesota. All of his investment and retirement income was administered by his Minnesota broker. When Roger needed funds, he contacted his brokerage firm in Minnesota and had money wire-transferred to his Florida account on an as-needed basis. Roger had a line of credit with a Florida bank. The Dreylings used a Minnesota accountant.

Roger also belonged to a variety of golf clubs and civic organizations. In Minnesota, he was a member of Koronis Hills Golf Course in Paynesville. In Florida, he was a member of the Port Charlotte Culture Center, the Port Charlotte Cribbage Club, the Sunny Breeze Golf Course, and the Port Charlotte Moose Lodge. Roger received mail in both Florida and Minnesota, but testified that his "primary mailbox" was in Florida.

The Dreylings lived together for virtually all of 2001 and 2002, with the only possible separation occurring during Carol's occasional visits to the Dreylings' children. Carol always traveled to Florida with Roger.

The Dreylings argued that the credit card statements they produced during the audit established the time Roger spent outside Minnesota. Those statements were not offered or admitted as exhibits at trial. The Commissioner argued that despite Roger's travels to Florida in 2001 and 2002, the center of his family and business life remained in Minnesota. Further, the Commissioner argued that the Dreylings failed to rebut the presumption of Minn. R. 8001.0300, subp. 2 (2001), that a person's domicile ordinarily remains that of his spouse. Since Carol maintained her Minnesota domicile, the Commissioner claimed that Roger was presumed to be domiciled in Minnesota during the tax years in question.

Following trial, the tax court affirmed the Commissioner's order. Upon examination of the 26 factors set forth in Minn. R. 8001.0300, subp. 3 (2007), the court concluded that Roger was a Minnesota domiciliary in 2001 and 2002 and, therefore, was ineligible for nonresident allocation of his income to another state. Additionally, the court concluded that the Dreylings had

failed to rebut the presumption that a person's domicile ordinarily remains the same as his spouse's domicile. The court also concluded that the Dreylings had failed to present evidence sufficient to establish that Roger was absent from Minnesota for 183 days or more in both 2001 and 2002. The court later denied the Dreylings' motion for amended findings. The Dreylings petitioned this court for certiorari.

■ The Dreylings argue that Roger does not meet the definition of "resident" in Minn.Stat. § 290.01, subd. 7 (2000).[2] A tax assessed by the Commissioner is presumed valid; the burden is on "the taxpayer to show its incorrectness or invalidity." Minn.Stat. § 270.68, subd. 3 (2004) (recodified at Minn.Stat. § 270C.61, subd. 5 (2006)).

> A review of any final order of the Tax Court may be had upon certiorari by the Supreme Court * * * on the ground that the Tax Court was without jurisdiction, that the order of the Tax Court was not justified by the evidence or was not in conformity with law, or that the Tax Court committed any other error of law.

Minn.Stat. § 271.10, subd. 1 (2006). "When reviewing the tax court's findings of fact, we determine whether sufficient evidence exists to support the tax court's decision." *Dreyling v. Comm'r of Revenue*, 711 N.W.2d 491, 494 (Minn.2006)

(*Dreyling I*). We review issues of law de novo. *Id.*

"All net income of a resident individual is subject to tax * * *." Minn.Stat. § 290.014, subd. 1 (2006). A person is a resident of Minnesota if at least one of the following is true: the person is domiciled in Minnesota, or the person "maintains a place of abode in the state and spends in the aggregate more than one-half of the tax year in Minnesota." Minn.Stat. § 290.01, subd. 7.[3]

■ The term "resident" includes "any individual domiciled in Minnesota." *Id.* " 'Domicile' means bodily presence in a place coupled with an intent to make that place one's home." *Dreyling I*, 711 N.W.2d at 494; *see also* Minn. R. 8001.0300, subp. 2. "The domicile of a spouse shall be the same as the other spouse unless there is affirmative evidence to the contrary or unless the husband and wife are legally separated or the marriage has been dissolved." Minn. R. 8001.0300, subp. 2. "An individual can have only one domicile at any particular time." *Id.* "A domicile once shown to exist is presumed to continue until the contrary is shown." *Id.* "No positive rule can be adopted with respect to the evidence necessary to prove an intention to change a domicile but such intention may be proved by acts and declarations, and of the two forms of evidence,

---

2. The Dreylings also argue that the Commissioner failed to provide adequate discovery responses to their written interrogatories and requests for admissions. The proper mode for objecting to discovery violations is a motion to compel during pretrial proceedings. *See* Minn. R. Civ. P. 37.01. The Dreylings filed such a motion but then withdrew it. Further, the tax court did not consider this argument, noting only in the order denying amended findings of fact that the Dreylings "allude to a discovery claim as a basis for amended findings, but they fail to detail this

issue." Accordingly, we decline to review this issue.

3. Although its substance has not changed, the current version of Minn.Stat. § 290.01, subd. 7 is structured somewhat differently than the 2000 version. *See* Minn.Stat. § 290.01, subd. 7 (2006). In the current version, subdivision 7(a) defines a resident as a person who is domiciled in Minnesota, and subdivision 7(b) defines a resident as a person who maintains a place of abode in the state and spends more than one-half the tax year in Minnesota. *Id.*

acts shall be given more weight than declarations." *Id.*

The Commissioner has promulgated a rule that lists 26 factors to be considered in determining domicile. *Id.*, subp. 3. No factor will, "by itself, determine domicile." *Id.* "[P]resence within the state for any part of a calendar day constitutes a day spent in the state. Individuals shall keep adequate records to substantiate the days spent outside the state."[4] Minn.Stat. § 290.01, subd. 7. "Adequate records means any contemporaneously kept records that establish the places of physical presence of the person on particular dates. Adequate records include, but are not limited to, calendars, diaries, canceled checks, credit card receipts, and airline tickets." Minn. R. 8001.0300, subp. 5 (2007).

■ Initially, the Dreylings argue that Roger's testimony based on his credit card statements and telephone records was sufficient to refute the presumption that the Commissioner's assessment is correct. Further, the Dreylings argue that they submitted "adequate records" as that phrase is defined in Minn. R. 8001.0300, subp. 5. The Dreylings rely on *Caballero v. Litchfield Wood–Working Co.*, 246 Minn. 124, 74 N.W.2d 404 (1956), to argue that, because he presented undisputed testimony that he was a resident of Florida during the relevant time period, the burden shifted to the Commissioner to prove that Roger was not a Florida resident. In *Caballero*, we said:

> Clear, positive, direct, and undisputed testimony by an unimpeached witness, which is not in itself contradictory or improbable, cannot be rejected or disre-

garded by either court or jury, unless the evidence discloses facts and circumstances which furnish a reasonable ground for so doing. Such testimony can be rejected only when doubt is cast upon its truthfulness by contradictory or discrediting facts or circumstances. The testimony of a witness may be disregarded if it contains inherent improbabilities or contradictions which, alone or in connection with other circumstances in evidence, furnish a reasonable ground for concluding that the testimony is not true.

*Id.* at 129, 74 N.W.2d at 408.

But *Caballero* is distinguishable. Specifically, *Caballero* was a contract dispute between private parties and not a dispute over personal income taxes with the Commissioner of the Department of Revenue. *See id.* at 125–26, 74 N.W.2d at 406. Additionally, this case involves the application of various rules involving presumptions, Minn.Stat. § 270.68, subd. 3 (setting forth presumption of validity of Commissioner's assessment of tax); Minn. R. 8001.0300, subp. 2 (establishing presumption that "[a] domicile once shown to exist * * * continue[s] until the contrary is shown" and presumption that spouses share the same domicile); the requirement of adequate records, Minn.Stat. § 290.01, subd. 7 ("Individuals shall keep adequate records to substantiate the days spent outside the state."); and the consideration of 26 factors to determine domicile, Minn. R. 8001.0300, subp. 3 (enumerating 26 factors to consider in determining domicile).

The tax court concluded that resolution of the case turned on whether the Dreyl-

---

4. This provision pertains to the definition of residency that applies to a non-domiciliary who maintains an abode in Minnesota and spends more than one-half the calendar year in Minnesota. *See* Minn.Stat. § 290.01, subd. 7. Because the Dreylings rely primarily on the claim that Roger was in Minnesota for less than one-half the calendar year, arguing that this demonstrates lack of domicile as well as lack of non-domiciliary resident status, we conclude that these definitions are relevant to the domicile inquiry as well.

ings established Roger's intent to change his domicile to Florida. Based on its consideration of the testimony, the court concluded that it could not accept Roger's uncorroborated and self-serving testimony as to the number of days that he was outside Minnesota. The court therefore concluded that the Dreylings failed to rebut the presumption that Roger's domicile was the same as Carol's and that they failed to present sufficient evidence that Roger was absent from Minnesota for 183 days or more for 2001 and 2002. Thus, the tax court had "a reasonable ground for concluding that the testimony is not true." *Caballero*, 246 Minn. at 129, 74 N.W.2d at 408.

■ The Dreylings next argue that application of the 26 factors to the facts of this case establishes that Roger was not a Minnesota domiciliary. The Dreylings rely heavily on the factor that considers the "percentage of time * * * that the person is physically present in Minnesota and the percentage of time * * * that the person is physically present in each jurisdiction other than Minnesota." Minn. R. 8001.0300, subp. 3(W). They argue that the evidence presented at trial conclusively shows that Roger spent less than one-half the tax year in Minnesota in 2001 and 2002.

We have reviewed several decisions of the Commissioner that have considered the question of domicile. In *Commissioner of Revenue v. Stamp*, 296 N.W.2d 867, 868 (Minn.1980), we affirmed a tax court decision that a husband and wife, long-time domiciliaries of Minnesota who had recently purchased a home in Florida and classified it as their homestead, were residents of Minnesota, despite their claimed intent to make Florida their domicile. We called the case "admittedly close" but concluded that the tax court "permissibly found that taxpayers' Minnesota-related activities contradicted their stated intent to make Florida their home." *Id.* at 870. Likewise, in *Sandberg v. Commissioner of Revenue*, 383 N.W.2d 277, 284 (Minn.1986), we affirmed the tax court's conclusion that a taxpayer with business interests in several states was a Minnesota domiciliary. *See also Dreyling I*, 711 N.W.2d at 495–96 (affirming tax court's conclusion that Roger was a Minnesota resident for a different tax year based on the fact that his permanent housing and business activities were primarily located in Minnesota); *Manthey v. Comm'r of Revenue*, 468 N.W.2d 548, 550 (Minn.1991) (affirming tax court's conclusion that taxpayer was a Minnesota resident despite working and spending at least 46 weeks a year in Alaska).

Here, the tax court considered the 26 factors and concluded that while some factors were arguable, 13 of the factors favored a finding that Roger was domiciled in Minnesota. As to the percentage of time that Roger was physically present in Minnesota compared to another jurisdiction, the tax court concluded that this "[did] not support [the Dreylings'] claim that [Roger] was not domiciled in Minnesota in 2001 and 2002." The court also concluded that the Dreylings did not provide adequate documentation to substantiate the claim and that Roger's testimony was "uncorroborated and self-serving." The record supports the tax court's conclusion. While the Dreylings provided some credit card statements and telephone bills during the audit, they did not offer those exhibits at trial, and they are not part of the record. Because Roger failed to provide adequate records, his argument lacks merit.

Like Stamp and Sandberg, Roger had been a Minnesota domiciliary for many years. *See Sandberg*, 383 N.W.2d at 278; *Stamp*, 296 N.W.2d at 868. Despite purchasing a home in Florida, Roger retained

his Minnesota living quarters and a Minnesota homestead election. Roger owned two homes, a farm, a commercial lot, and two other lots in Minnesota. Roger maintained his Minnesota medical license, took a continuing education course in Minnesota, and received the materials for a continuing education correspondence course at his Minnesota address. Roger had multiple vehicles located and registered in Minnesota. He also had Minnesota hunting and fishing licenses. Although Roger had a checking account in Florida, the bulk of his financial dealings was in Minnesota, including checking accounts, retirement assets, and investments. The money in the Florida checking account was transferred there by Roger's Minnesota broker. Roger was a member of a Minnesota club, received mail in Minnesota, and purchased insurance for his Minnesota property in Minnesota.

We conclude that sufficient evidence supports the tax court's conclusion that Roger was a Minnesota domiciliary. We therefore hold that sufficient evidence supports the tax court's determination that Roger was a Minnesota resident in 2001 and 2002.

Affirmed.