Geronimo SANCHEZ, et al., Relators,

v.

**COMMISSIONER OF REVENUE,**
Respondent.

No. A08–2281.

Supreme Court of Minnesota.

Aug. 20, 2009.

Paul A. Banker, Jeffery J. McNaught, Jessica L. Meyer, Lindquist & Vennum P.L.L.P., Minneapolis, Minnesota, for relators.

Lori Swanson, Attorney General, Rita Coyle DeMeules, Assistant Attorney General, St. Paul, Minnesota, for respondent.

## OPINION

MEYER, Justice.

Relators, Geronimo and Kathleen Sanchez, appeal from a Minnesota Tax Court decision finding they were domiciled in Minnesota during the entire 2004 tax year and, thus, responsible for Minnesota income tax during that period. We affirm.

The Sanchezes became Minnesota residents in October 1998 when the United States Army transferred Geronimo Sanchez from his former station overseas. In November 1998, they purchased a home in Apple Valley, Minnesota. Before coming to Minnesota, the Sanchezes had no connection to Minnesota.

Geronimo Sanchez retired in 2000, and the couple began to make improvements to their home in Apple Valley in anticipation of selling it. The couple also purchased a motor home and began traveling extensively, spending winters in Texas. In the spring of 2003, they listed their home for sale, but took it off the market 6 months later because it did not sell. They again listed their home in the spring of 2004, and it sold. The closing date was set for June 18, 2004.

In May 2004, the Sanchezes traveled to South Dakota. The record is not clear as to how many days the Sanchezes actually spent in South Dakota, because they did not keep records, but in their brief the Sanchezes stated that they "took several trips to South Dakota." The tax court found, based on the Sanchezes' estimate, that the Sanchezes were present in South Dakota for approximately 10 days during 2004, and that all of their time spent in South Dakota preceded the June 18, 2004, closing on their home in Apple Valley.

The Sanchezes' affidavit submitted to the tax court stated that during their visits to South Dakota, they retained a mailing address from My Home Address, Inc.,[1] a

---

1. My Home Address provides a home base and home address arrangement for traveling individuals, and acts as a mail forwarding service. The company provides information and assistance with registering to vote, obtaining absentee ballots, registering vehicles, registering boats, obtaining drivers' licenses, and obtaining licenses to hunt and fish in South Dakota. My Home Address also provides and coordinates referrals to connect new residents to professionals in areas such

company in Emery, South Dakota. Then, using their South Dakota address, the Sanchezes applied for and received South Dakota drivers' licenses, opened a checking account, obtained credit cards, registered their vehicles, and registered to vote. They also notified their insurance providers of their new address. The Sanchezes did not rent or purchase property in South Dakota, as they planned to travel and wanted to avoid the expenses and obligations of home ownership. Their affidavit states that they intended to return to South Dakota to rent or buy a home.

After their visits to South Dakota, the Sanchezes returned to Minnesota and stayed here until closing on the sale of their home on June 18, 2004. They then moved from Minnesota and have not resided in the state since that date. For the remainder of 2004, the Sanchezes traveled in their motor home to 13 states, the District of Columbia, and Canada, and did not return to either Minnesota or South Dakota. They did not seek medical services in 2004, but they received dental services in California. The Sanchezes filed their Minnesota 2004 tax return as "part-year residents," believing that they were Minnesota residents until June 18, 2004, and South Dakota residents after that date.[2] They also claimed Minnesota homestead status on their property tax filings through June 18, 2004.

The Commissioner of Revenue (the Commissioner) audited the Sanchezes' 2004 tax return. Based on the legal presumption that the Sanchezes' domicile continued to be Minnesota in the absence of proof establishing domicile in another state, the Commissioner treated the couple as full-year residents of Minnesota and assessed additional income tax, penalties,

and interest for 2004. The Commissioner denied the Sanchezes' administrative appeal, and the Sanchezes appealed to the Minnesota Tax Court. Both parties filed cross-motions for summary judgment and, after a hearing, the tax court granted the Commissioner's motion. Applying the standards established in the administrative rules of the Department of Revenue for determination of domicile, the tax court concluded that the Sanchezes had not established domicile in South Dakota and were responsible for income taxes in Minnesota for the full year. This appeal followed.

■ We review an order granting summary judgment to determine if the lower court erred in applying the law and whether any material facts are disputed. *Chapman v. Comm'r of Revenue*, 651 N.W.2d 825, 830 (Minn.2002). The tax court's conclusions of law and interpretation of statutes are reviewed de novo. *Id.* Decisions that involve questions of fact are reviewed "to determine whether there is sufficient evidence to support the decision." *Miller's Estate v. Comm'r of Taxation*, 240 Minn. 18, 20, 59 N.W.2d 925, 926 (1953). Whether departure from an established domicile and residence in a new state effects a change in domicile is "ordinarily a question of fact, depending ... upon the purpose and intent of the change." *Davidner v. Davidner*, 304 Minn. 491, 494, 232 N.W.2d 5, 7 (1975).

The issue on appeal is whether the tax court correctly found that the Sanchezes' actions failed to demonstrate either physical presence, or an intent to establish domicile, in South Dakota in 2004. In Minnesota, "[a]ll net income of a resident individual is subject to tax." Minn.Stat. § 290.014, subd. 1 (2008). The definition

as banking, legal services, medical and dental services, insurance, and accounting.

**2.** South Dakota has no income tax, so no partial-year filing was necessary in that state.

of "resident" applicable here is "any individual domiciled in Minnesota." Minn. Stat. § 290.01, subd. 7(a) (2008); *see* Minn. R. 8001.0300, subp. 1 (2007). To establish "domicile," one must have "bodily presence ... in a place coupled with an intent to make such a place one's home." Minn. R. 8001.0300, subp. 2 (2007). Domicile "is that place in which that person's habitation is fixed, without any present intentions of removal therefrom, and to which, whenever absent, that person intends to return." *Id.*

 While individuals can be residents of more than one state, as residency only requires physical presence in a place, individuals can have only one domicile at any time. Minn. R. 8001.0300, subp. 2. Once domicile is established in Minnesota, it is presumed to continue until another domicile is actually established. *Id.* The taxpayer has the burden of proving a new domicile outside of Minnesota. *See Sandberg v. Comm'r of Revenue,* 383 N.W.2d 277, 283 n. 7 (Minn.1986). We have "stressed that a party does not need to prove *abandonment* of present domicile, but, instead, rebut[ ] the presumption that he or she has not changed domicile by proving establishment of domicile in another jurisdiction." *Id.* (emphasis in original). "One must actually reside in the new state at the time the intent is formed to make the new state one's permanent home." *Wolf v. Comm'r of Revenue,* No. 7068, 1999 WL 640030, at *2 (Minn. T.C. Aug. 17, 1999); *see also Davidner,* 304 Minn. at 493–94, 232 N.W.2d at 7. "[R]esidence without intention, or intention without residence" does not establish domicile. *Davidner,* 304 Minn. at 493, 232 N.W.2d at 7; *see also* Minn. R. 8001.0300, subp. 2.

 When one announces an "intent to make a new abode one's home, the trier of fact may consider the acts and circumstances of that person in evaluating the sincerity of the announced intent." *Comm'r of Revenue v. Stamp,* 296 N.W.2d 867, 869 (Minn.1980). Intent is evaluated on a case-by-case basis, and a taxpayer's actions are of more significance than his or her statements. Minn. R. 8001.0300, subp. 2.

The administrative rules of the Department of Revenue contain a list of 26 factors to consider in determining whether a taxpayer remains domiciled in Minnesota for tax purposes; no single item is determinative. Minn. R. 8001.0300, subp. 3 (2007). All parties agree that the Sanchezes left Minnesota with no intent to return. The issue is whether the Sanchezes established a new domicile in South Dakota.

 The tax court found that the Sanchezes did not establish domicile in South Dakota before June 18, 2004, because they had no intent to make South Dakota their domicile. According to the tax court, although the Sanchezes traveled to South Dakota, changed their mailing address, registered their vehicles in South Dakota, obtained South Dakota drivers' licenses and a checking account, and registered to vote in South Dakota, they "concede[d] that their pre-June 18, 2004 actions in South Dakota had no effect on their Minnesota domicile." Citing the Sanchezes' affidavit, the tax court found that the Sanchezes admitted "that after they obtained those registrations or licenses they continued to reside and be domiciled in Minnesota for at least another month or until June 18, 2004."

The record supports the tax court's finding that the Sanchezes had no intent to change their domicile before June 18, 2004. There is no evidence in the record that the Sanchezes' visits to South Dakota were anything but temporary visits to secure a South Dakota mailing address. Before the

tax court, the Sanchezes' attorney stated that the Sanchezes "finish[ed] up the process of their Minnesota domicile" by June 18, 2004. Here, the Sanchezes state that their "domicile changed no later than the closing on their Minnesota property" and that "each of the legal requirements to establishing their domicile in South Dakota already had been met leading up to and including the formal closing on their home." On the Residency Questionnaire forms sent to the Minnesota Department of Revenue, the Sanchezes claimed continued Minnesota residency until June 18, 2004. They also claimed homestead status on their Minnesota home until June 18, 2004.

The Sanchezes contend that the tax court improperly elevated their home ownership in Minnesota above the 25 other factors used to determine domicile. But the tax court made little mention of the fact that the Sanchezes retained a home in Minnesota, as the disputed issue was whether they established a new domicile in South Dakota.

The tax court also found that the Sanchezes did not establish domicile in South Dakota as of June 18, 2004, when they moved out of Minnesota, because they were not physically present in South Dakota on or after June 18, 2004. The court found that the Sanchezes "had no physical presence in South Dakota after they sold their home in Minnesota," that they did not "integrate[ ] their lives in South Dakota after June 18, 2004," that they "established no connection to South Dakota," and that "apart from a paper record of registrations for mailing and licensing purposes, the record is silent as to any associations they established in South Dakota." The court found that the use of a South Dakota mailing address did not prove physical presence in South Dakota and that the Sanchezes made no showing that they used My Home Address as anything more than a mail forwarding service after they left Minnesota.

The Sanchezes contend that the tax court erred in considering only their actions after the June 18, 2004, closing on their home to determine if they established a South Dakota domicile. They argue that their May 2004 physical presence in South Dakota, coupled with their intent. to make South Dakota their domicile on June 18, 2004, was enough to establish South Dakota domicile.

The Commissioner contends that the Sanchezes cannot combine their May 2004 physical presence in South Dakota with their June 18, 2004, intent to make South Dakota their domicile because presence and intent must be simultaneous. He also argues that the Sanchezes' physical presence in South Dakota was nothing more than a temporary visit to complete paperwork and not the kind of physical presence required to establish domicile.

We have said that to "establish or change one's 'domicile' requires one's bodily presence in a place coupled with an intent to make such place one's home." *Manthey v. Comm'r of Revenue,* 468 N.W.2d 548, 549 (Minn.1991). We need not decide whether presence and intent must be simultaneous under every possible scenario. Suffice it to say that on this record, there is ample support for the tax court's conclusion that the Sanchezes had no physical presence in the State of South Dakota that was sufficient to demonstrate that they intended to make their home there and integrate their lives into the community. There is no evidence that their visits to South Dakota during 2004 were anything more than brief, temporary stays for the purpose of establishing a mailing address.

The Sanchezes argue that the tax court should have found that their situation was

analogous to *Marcotte v. Comm'r of Revenue*, No. 4541, 1987 WL 10252, at *2 (Minn. T.C. Mar. 13, 1987). In *Marcotte*, the taxpayer purchased a condominium in Florida in May 1982 but retained a Minnesota condominium until the housing market improved in 1985. *Id.* After going to Florida to buy the condominium, Marcotte traveled in a motor home, returning to Minnesota, and also visiting Wisconsin, Montana, and Canada. *Id.* He finally settled in Florida in October 1982. *Id.* The tax court concluded that Marcotte was domiciled in Florida as of May 1982, as he had a valid reason not to sell his Minnesota condominium, he had a Florida driver's license, registered to vote in Florida, registered his vehicles in Florida, and joined a tennis club. *Id.* at *1–2. Marcotte also cancelled his Minneapolis Athletic Club membership, although he did retain bank accounts in Minnesota and had friends, relatives, children, and parents in the state. *Id.* Here, unlike *Marcotte*, there is no evidence that the Sanchezes established their domicile in South Dakota because South Dakota was not the place in which their habitation was fixed. Minn. R. 8001.0300, subp. 2.

We affirm the tax court's order granting the Commissioner's motion for summary judgment.

DIETZEN, J., took no part in the consideration or decision of this case.

PAGE, Justice (dissenting).

I respectfully dissent. I do so because, on the record presented, the Sanchezes transferred their domicile from Minnesota to South Dakota no later than June 18, 2004. A person changes their domicile in Minnesota when they move to another jurisdiction with the intention of remaining there permanently or for an indefinite period of time. Minn. R. 8001.0300, subp. 2 (2007). Here, it is not disputed that the Sanchezes left Minnesota with no intent to return. Nor is it disputed that the Sanchezes traveled to South Dakota, obtained a South Dakota mailing address, applied for and received South Dakota drivers' licenses, opened a checking account, obtained credit cards, registered their vehicles, registered to vote, and notified their insurance providers of their change of address. This evidence indicates that the Sanchezes moved to South Dakota with the intent to make it their permanent home, thus establishing a new domicile. The Sanchezes' actions are not actions that a taxpayer would undertake merely to create an illusion of changing domicile.

This court has never before held that a taxpayer must shackle themselves to another state in any specific fashion or for any specific period of time in order to effect a change in domicile. But, after today's decision, taxpayers wishing to establish a change in domicile will have to buy or rent property in another state and remain physically present in that state for some undefined period of time. The logical absurdity of the court's decision is that because the Sanchezes did not buy or rent property or spend sufficient time in South Dakota, they remain to this day subject, at the Commissioner of Revenue's whim, to Minnesota's income tax even though they have completely abandoned their Minnesota domicile. Therefore, I would reverse the tax court's order granting the Commissioner's motion for summary judgment.