William D. LARSON, Relator,

v.

COMMISSIONER OF REVENUE,
Respondent.

No. A12–0378.

Supreme Court of Minnesota.

Jan. 9, 2013.

Sue Ann Nelson, Masha M. Yevzelman, Fredrikson & Byron P.A., Minneapolis, MN, for relator.

Lori Swanson, Attorney General, Jeremy D. Eiden, Tamar N. Gronvall, Assistant Attorneys General, Saint Paul, MN, for respondent.

## OPINION

GILDEA, Chief Justice.

Relator William D. Larson ("Larson") challenges the decision of the Minnesota Tax Court that affirmed an order of the Minnesota Commissioner of Revenue ("Commissioner"). Larson argues that the tax court erred in concluding that he was a Minnesota resident for income tax purposes during the 2002–2006 tax years ("tax years"). Because the tax court did not err in its application of the law and the record supports the tax court's determination, we affirm.

The record before the tax court establishes that Larson was born and raised in Minnesota. He also owns and operates several businesses in Minnesota, including Peterbilt truck dealerships. Larson moved out of Minnesota in 1981 but moved back to this State in 1989 when his businesses were experiencing financial difficulties. When the financial difficulties subsided, Larson "pulled back" from the day-to-day operations of his businesses. But Larson remained chairperson of his companies and was compensated for his work. He also personally guaranteed the companies' debts and continued to confer with the companies' managers, predominately by telephone and fax.

In approximately 1997, Larson entered into negotiations to purchase a Peterbilt dealership in Las Vegas, Nevada. As a condition of the purchase, Larson was required to live in Las Vegas and divest himself of his dealerships in Minnesota and Wisconsin. In June 1998, Larson purchased a Las Vegas condominium ("Unit 401"). Shortly thereafter, Larson moved the bulk of his clothes, a sizeable wine collection, two pieces of art, and numerous other personal possessions to Nevada. Around that same time, Larson obtained a Nevada driver's license; canceled his Minnesota driver's license; established a home office in Unit 401; registered to vote in Nevada, although he never actually voted; homesteaded his Nevada residence; opened a Nevada bank account; registered two cars in Nevada; and informed his advisors he was moving to Nevada.[1] Larson was, however, never able to sell his Peterbilt dealerships in Minnesota and Wisconsin. Accordingly, Larson lost the opportunity to purchase the Las Vegas Peterbilt dealership.

Larson filed his individual income tax return as a full-time Minnesota resident in 1998. From 1999–2006, however, Larson filed his Minnesota individual income tax

---

1. Larson testified that Unit 401 was his home where he kept all of his personal items. But Larson's tax returns from 2002–2004 indicate that he collected rental income on Unit 401. At trial, Larson testified that he did not collect rent on Unit 401, and there was a mistake in the tax returns. The tax court rejected this testimony. Because the tax court is in the best position to make such credibility determinations, we defer to the tax court. *Dreyling v. Comm'r of Revenue*, 711 N.W.2d 491, 494 (Minn.2006).

return as a nonresident. The Commissioner conducted two audits of Larson's individual income tax returns, spanning the 2002–2006 tax years. The Commissioner determined that Larson was a resident of Minnesota during the tax years. Larson appealed the Commissioner's determination to the tax court.

Before the tax court, Larson argued that he became a resident of Nevada in 1998, and, therefore, the Commissioner erred in requiring Larson to pay taxes as a Minnesota resident during the tax years. Following trial, the tax court affirmed the Commissioner's orders. Upon examination of the factors set forth in Minn. R. 8001.0300, subp. 3 (2011), the tax court concluded that Larson was a Minnesota domiciliary during the tax years and, therefore, was a resident of Minnesota for income tax purposes. Larson petitioned our court for certiorari.

 We review the tax court's findings of fact "to determine whether there is sufficient evidence to support the decision." *Miller's Estate v. Comm'r of Taxation,* 240 Minn. 18, 20, 59 N.W.2d 925, 926 (1953); *see also* Minn.Stat. § 271.10, subd. 1 (2012) (stating that "review may be had on the ground that ... the order of the Tax Court was not justified by the evidence"). But we review the tax court's conclusions of law and interpretations of statutes de novo. *Sanchez v. Comm'r of Revenue,* 770 N.W.2d 523, 525 (Minn.2009).

## I.

Larson argues that the tax court erred in concluding he was a Minnesota resident during the tax years. In Minnesota, "[a]ll net income of a resident individual is subject to tax." Minn.Stat. § 290.014, subd. 1 (2012). A person is a Minnesota "resident" for tax purposes if he is "domiciled in Minnesota" during the tax period in question. Minn.Stat. § 290.01, subd. 7

(2012). Domicile means "that place in which [a] person's habitation is fixed, without any present intentions of removal therefrom, and to which, whenever absent, that person intends to return." Minn. R. 8001.0300, subp. 2 (2011). To be domiciled, one must have "bodily presence ... in a place coupled with an intent to make such a place one's home." *Id.*

## A.

 The parties do not dispute that Larson was a resident of and domiciled in Minnesota before 1998. The question is whether Larson changed his domicile to Nevada in 1998. Once domicile in Minnesota is established, that domicile is presumed to continue until "the contrary is shown." *Manthey v. Comm'r of Revenue,* 468 N.W.2d 548, 550 (Minn.1991); *see also* Minn. R. 8001.0300, subp. 2. The taxpayer therefore has the burden of proving a new domicile outside of Minnesota. *Sanchez,* 770 N.W.2d at 526; *see also Sandberg v. Comm'r of Revenue,* 383 N.W.2d 277, 283 n. 7 (Minn.1986) (noting that a taxpayer rebuts the presumption of continuing Minnesota domicile by proving establishment of domicile in another jurisdiction). Departure from an established domicile is "ordinarily a question of fact." *Sanchez,* 770 N.W.2d at 525 (citation omitted) (internal quotation marks omitted). We agree with the tax court that Larson did not meet his burden to show that he established a new domicile in Nevada.

 It is undisputed that Larson purchased a home in Nevada and moved personal possessions there in 1998. Since 1998, Larson also has purchased several additional properties in Nevada; homesteaded properties in Nevada; registered to vote in Nevada; received a valid driver's license in Nevada; and joined a club in Nevada. In the absence of an intent to remain in Nevada, however, Larson's

physical relocation to Nevada does not change his domiciliary status. *See* Minn. R. 8001.0300, subp. 2.

Indeed, as the tax court found, Larson's connection with Minnesota during the tax years, when compared to his connection with Nevada, provided evidence that Larson did not intend to change his domicile. The record shows that Larson owned more property in Minnesota than he did in Nevada, spent more time in Minnesota than he did in Nevada, registered more vehicles in Minnesota than Nevada, and maintained bank accounts and mail delivery in Minnesota.

Larson also maintained other personal and professional connections in Minnesota that he did not have in Nevada. For example, Larson had no family living in Nevada during the tax years; his sister, his three children, and his four grandchildren live in Minnesota and his youngest son attended school in Minnesota during the tax years. Larson used one attorney in Nevada during the tax years, but retained four law firms in Minnesota during the same period. Larson had a personal assistant in Nevada, but in contrast to his assistant in Nevada, Larson's personal assistant in Minnesota managed Larson's bank accounts, paid Larson's bills, and received Larson's mail in Minnesota. And Larson employed two accounting firms in Minnesota, maintained a brokerage account in Minnesota, and returned to Minnesota for continuing medical treatment during the tax years.

In sum, the record supports the tax court's determination that Larson did not prove that he intended to change his domicile to Nevada. *See, e.g., Manthey,* 468 N.W.2d at 549–50 (upholding tax court's decision that a taxpayer who financially supported his family in Minnesota; maintained a Minnesota driver's license; purchased a Minnesota hunting license; pur-

chased real estate; owned, licensed, and registered vehicles in the state; and maintained a joint checking account remained a Minnesota resident while physically living in Alaska); *Sandberg,* 383 N.W.2d at 280, 283–84 (finding an individual domiciled in Minnesota despite his statements that he was domiciled in Texas because he owned Minnesota businesses; owned a house in Minnesota; had a Minnesota driver's license; registered his vehicles in Minnesota; had insurance in Minnesota; and received medical care in Minnesota); *Comm'r of Revenue v. Stamp,* 296 N.W.2d 867, 868–70 (Minn.1980) (finding individuals domiciled in Minnesota because they kept their Minnesota home but leased the property; had their principal checking/savings accounts in Minnesota; obtained a loan in Minnesota; and maintained social affiliations in Minnesota).

■ Larson argues, however, that the tax court erred in assessing his intent to change his domicile because the court did not limit its inquiry to events occurring in 1998, the year Larson moved to Nevada. We disagree. The intent to change one's domicile "may be proved by acts and declarations." Minn. R. 8001.0300, subp. 2. And of these "two forms of evidence, acts must be given more weight than declarations." *Id.; see also Dreyling v. Comm'r of Revenue,* 753 N.W.2d 698, 701–02 (Minn. 2008). In reviewing whether the taxpayer intended to change his or her domicile, we examine more than simply acts occurring at the time of and shortly after the taxpayer's physical move to another state. *See, e.g., Dreyling v. Comm'r of Revenue,* 711 N.W.2d 491, 493, 495 (Minn.2006) (citing the fact Dreyling left Alaska for good when he suffered health problems in 2000 in assessing whether Dreyling had the intent in 1998 to change his domicile); *Manthey,* 468 N.W.2d at 550 (citing the fact that "[w]hen work ran out in 1979 and

again in 1986, Manthey returned to Minnesota" as demonstrating that, contrary to the assertion that he formed the intent to change his domicile in 1976, Manthey "never intended to uproot himself from Minnesota"); *see also Davidner v. Davidner*, 304 Minn. 491, 494, 232 N.W.2d 5, 7 (1975) (rejecting the wife's contention that her husband intended to change his domicile from Minnesota when he moved to Utah by the fact that the husband later accepted a permanent position in Missouri after his Utah medical residency was complete).

Consistent with this precedent, the tax court looked not only at Larson's stated intent and his actions in 1998, but also the "acts and circumstances" of Larson's life thereafter to evaluate "the sincerity of [his] announced intent." *Sanchez*, 770 N.W.2d at 526 (citation omitted) (internal quotation marks omitted). As the tax court found, Larson's actions after 1998 demonstrated his continued intent to remain domiciled in Minnesota, not Nevada. *See* Minn. R. 8001.0300, subp. 2. We hold that the tax court did not err in considering events after 1998 to determine whether Larson proved that he changed his domicile from Minnesota to Nevada.[2]

#### B.

Larson next argues that the tax court erroneously created and applied a new "domiciliary presence" test to determine residency. The tax court explicitly analyzed 14 of the 26 factors in Minn. R. 8001.0300, subp. 3, and found that "when all factors, along with [Larson's] acts and circumstances are considered in their totality, the evidence indicates [Larson's] continued presence in Minnesota." The tax court thus concluded that "the locus of [Larson's] life is in Minnesota." Larson contends that the tax court's analysis is contrary to Minn. R. 8001.0300 and to Minn.Stat. § 290.01, subd. 7. We disagree.

The tax court's reliance on Larson's "continued presence in Minnesota" and the "locus" of Larson's life is not inconsistent with Rule 8001.0300 or Minn.Stat. § 290.01, subd. 7. The Commissioner published Rule 8001.0300 to aid in the enforcement and administration of residency requirements under state revenue laws—including Minn.Stat. § 290.01, subd. 7. *See* Minn.Stat. § 270C.06 (2012); *see also Sanchez*, 770 N.W.2d at 526 (applying Minn. R. 8001.0300 to assess domicile under Minn.Stat. § 290.01, subd. 7). Because Rule 8001.0300 has "the force of law," compliance with the rule is akin to satisfying the statutory requirement. Minn.Stat. § 270C.06 (delegating such rule making authority to the commissioner); *accord Sanchez*, 770 N.W.2d at 526; *Dreyling*, 711 N.W.2d at 494–96. The specific factors listed in Minn. R. 8001.0300, subp. 3 are "nonexclusive." *Dreyling*, 711 N.W.2d at 494. The list "aid[s] in the determination of domicile," but does not provide the only factors the court may consider. *Id.* That the tax court looked at the focus of Larson's life to assess domicile is consistent with Minn. R. 8001.0300, subp. 3, and tax court precedent. Indeed, the

---

2. Larson relies on *Morrissey v. Commissioner of Revenue*, No. 4866, 1988 WL 91653 (Minn. T.C. Aug. 15, 1988) and *Page v. Commissioner of Revenue*, No. 4011, 1986 WL 15695 (Minn. T.C. Mar. 12, 1986) to argue that the tax court erred when it did not assess his intent at the time he moved to Las Vegas. But the tax court in both cases examined the taxpayers' actions *after* the date of their moves when assessing the taxpayers' intent. Accordingly, *Morrissey* and *Page* do not limit the tax court to the narrow time period Larson advocates. *Morrissey*, 1988 WL 91653 at *7 (finding that Morrissey did not change his domicile until he rented living quarters and added his own furnishings in spite of his earlier job transfer); *Page*, 1986 WL 15695, at *8 (discussing a questionnaire filled out four years after the taxpayers' move to decide whether the taxpayers were domiciled in Minnesota).

tax court frequently looks to where an individual's life focuses in examining the question of domicile. *See, e.g., Dreyling v. Comm'r of Revenue,* No. 7721–R, 2007 WL 4088814, at *8 (Minn. T.C. Nov. 15, 2007) (noting that the "center" of the taxpayer's life was in Minnesota); *Page,* 1986 WL 15695, at *6 (noting the change in the "focus of [the taxpayers'] lives"); *Howe v. Comm'r of Revenue,* Nos. 4471, 4375, 1986 WL 9429, at *4 (Minn. T.C. June 13, 1986) (noting that a taxpayer's yearly return to Minnesota indicated the "focus of [his] life remained in this state"). We therefore hold that the tax court did not err in analyzing where Larson was domiciled.

## II.

■ Finally, Larson argues that there was not sufficient evidence to support the tax court's decision that he was domiciled in Minnesota during the tax years. Larson contends that the tax court made factual errors and omissions that require reversal. In general, our review of a "final decision of the tax court is limited and deferential." *Singer v. Comm'r of Revenue,* 817 N.W.2d 670, 674 (Minn.2012) (citation omitted) (internal quotation marks omitted). Even in close cases, we have consistently upheld the tax court's decision. *See, e.g., Manthey,* 468 N.W.2d at 550; *Stamp,* 296 N.W.2d at 870. We have carefully reviewed the record, and considered Larson's arguments regarding factual errors and omissions. Our review establishes that the evidence supports the tax court's determination that Larson was a Minnesota domiciliary and that Larson's arguments to the contrary are without merit. We therefore hold that the tax court's determination that Larson was a Minnesota resident during the 2002–2006 tax years is not erroneous.

Affirmed.

PAGE, J., took no part in the consideration or decision of this case.

WRIGHT, J., not having been a member of the court at the time of submission, took no part in the consideration or decision of this case.